McBRIDE, Judge.
Plaintiff has appealed from the judgment dismissing his suit on a policy of insurance for $2,100, intended to indemnify him, among other things; 'for loss by fire of a 1947 Buick automobile. While the policy was in force, the automobile was completely destroyed on November 11 or 12, 1949, and the insurance company paid to plaintiff the sum of $1,475, reserving the latter’s right to bring suit for any additional loss suffered.
Plaintiff seeks to recover $625 (plus penalties), which he alleges is still due him on the policy. The petition sets forth alternative causes of action. After first alleging that the amount claimed is the difference between the sum paid by the insurer and the amount for,which the automobile was insured, plaintiff alternatively, avers that the amount claimed represents the difference between the sum paid him and. the actual cash value of the , car at the time of the fire.
In argument plaintiff’s counsel takes the position that the policy, was for a “stated amount,’’ but we believe what he evidently means is that the contract is a “valued policy.”'
On the first page the contract stipulates the “Coverages,” the “Limits of Liability,” the “Net Rates,” and “Premiums.” Under the heading “Coverages” is “W-Comprehensive” and under the “Limits of Liability” thereon is inserted in typewriting the figures “$2100.00.”
Section 13, under “Conditions,” limits the liability of the insurer'under “W-Coverage” thus:
“The limit of the company’s liability for loss shall not exceed the actual cash value of the automobile; * * * at time of loss * *
These clear and unambiguous policy terms completely set at naught counsel’s first contention that he is entitled to payment of the face amount of the policy. The contract conforms strictly to the law prevailing both at the time of its issuance and at the time of the loss. Act No. 195 of 1948, Sec. 15.01(b), (now LSA-R.S. 22:-691, subd. B), provides: “No policy or contract of fire insurance shall be made, issued or delivered by any insurer, * * * unless it shall conform as to all provisions, stipulations, agreements and conditions, with” the Standard Fire Insurance Policy of the State of Louisiana. The form of standard fire policy adopted by the Legislature provides that the insurance is “to an amount not exceeding - dollars, * * * to the extent of the actual cash value of the property at the time of loss, * * * ” Act No. 195 of 1948, Sec. 15.01 (f), (now LSA-R.S. 22:691, subd. F). Therefore, the contract is not a “valued” one. A valued policy would have been illegal. and unenforceable -for the simple reason that such policy covering any property except immovables by nature -is invalid, in direct contravention of the standard policy provisions,- and contrary to the announced public policy of the State.
The issuance of valued policies insuring against the loss of movables by fire is prohibited. The first valued policy insurance statute in this State was Act No. 135 of 1900, which was later embodied in the Insurance Code, Act No. 195 of 1948, Sec. 15.05, (now LSA-R.S. 22:695). This legislation refers to property immovable by nature, and has no applicability to fire insurance on any other kind of property. It is provided that the value of the property *816 insured as assessed by the insurer, or as by him permitted to be assessed at the time of the issuance of the policy, shall be conclusively taken to be the true value of the property at the time of the issuance of the policy and the true value of the property at the time of its damage or destruction. It is further provided in the above mentioned statutes that if the property shall be totally destroyed, the full amount of insurance shall be paid by the insurer.
In the case of Lake Arthur Dredging Co. v. Mechanics’ Ins. Co., 162 La. 1090, 111 So. 466, 468, the Court rejected the contention that a fire insurance policy covering a dredge was a valued policy, and held that whereas the dredge was a movable, no valued policy could have been issued. The Court said:
“Section 22 of Act 105 of 1898 provides that no fire insurance company shall issue 'fire insurance policies on property in this state other than those which shall conform to the requirements of the.New York standard form of fire insurance policy.
“The only valued policy insurance statute in this state is Act 135 of 1900.
******
“It is very clear, however, that the statute only refers to property immovable by destination and can have no application to the insurance on movable property.
“There is no statute in this state which renders an insurance company liable for-the full amount of a policy in event of -a total loss or destruction of movable property, and there is no law of this state, other than the act of 1898 and of 1908, which fixes the value of the movable property for purposes of insurance and provides for a method of ascertaining that value .and the liability of the insurance company.
“The provisions of the statutes in that respect must be held as exclusive and binding on both the company and . the assured until changed by the Legislature. ; .
“Any attempt to establish by agreement inserted in the policy any valuation of movable property as a basis for the purpose of the insurance and any tnethod of arriving-at such value and the loss, otherwise than as provided in the statutes, must be rejected as not written into the policy.
“This is the fiat of the law which declares that any condition in the policy contract in contravention of the terms of the statute shall be void and of no effect.
******
“We are bound to conclude, therefore, that the statute adopting the New York standard form of policy is still in force in this state and must control in so far as insurance on movable property is concerned and that no insurance company can write a policy on movable property except in accordance with that statute.
“That in all such insurance policies the value of the property is to be ascertained as - of the date of the fire.
■ “The statute is fair to both the company and the insured.”
Plaintiff maintains that the defendant is estopped from denying the $2,100 coverage because it collected an additional premium based on that declared value. He sought to prove that agents of the defendant represented to his broker that there were two forms of insurance, and that the type of policy issued to him would insure him for the stated amount in consideration of a premium higher than that charged for the other policy. At no time did plaintiff deal with any agent of the ccimpany, but, on the contrary, his transactions were had with his own insurance broker. The broker admitted that he was not the agent of the insurance company, but was an “independent broker.” A broker is one who acts for an insured or prospective insured and no.t as the agent of an insurer. Act No. 195 of 1948, Sec. 25.02, (now LSA-R.S. 22:-1162). See also Morris McGraw Wooden Ware Co. v. German Fire Insurance Co., 126 La. 32, 52 So.. 183, 38 L.R.A.,N.S., 614; *817 Conley v. Dilbeck Dominey Ins. Agency, La.App., 40 So.2d 820, both decided before the advent of the Insurance Code. Whatever the broker might have understood from the agents of defendant concerning premium rates for different types of policies cannot be the means of estop-ping defendant from contending that the policy was issued in accordance with the law and is in fact an actual cash value policy.
As to the alternative demand, there was some discussion as to which party carrifed the burden of proof, but we need not discuss this issue except to say that the Supreme Court in Tedesco v. Columbia Ins. Co., 177 La. 142, 148 So. 8, held that the burden of proof is upon the plaintiff in such a case as is now before us.
The lower court was obviously of the opinion that plaintiff had failed in his attempt to show that the cash value of the automobile when destroyed was greater than the amount of the adjustment made.by the insurance company, and in this conclusion we readily concur.
The 1947 Buick car was a year old when purchased by plaintiff on December 29, 1948 and two years old when the fire occurred. Plaintiff maintains that the car was in good condition and worth $2,100, and two witnesses were produced to corroborate this assertion. The first of these, Mannino, plaintiff’s friend and neighbor, testified that in 1949 the Buick could have been sold at any figure from $1,195 to $2,100, depending “on what your dealer is figuring on getting. Some dealers are satisfied with a little more profit or less profit than others.” He fixed the value of the Buick at around $2,000, saying “some dealers might sell 'it higher than that. Some dealers would sell below that.” He further said that he could have sold the car for $2,000. Mannino represented himself as being a used car salesman, but produced no records showing how many cars of the type of plaintiff’s 1947 Buick were handled by him in 1949 or the prices at which they were sold. This case was tried in June 1951 and Mannino’s testimony as to valuations in 1949 was from memory only. The other witness for plaintiff; Cerise, knew nothing regarding the value of the car, and he merely testified that in his opinion its condition was “good.”
Defendant also produced two witnesses, Ruckstuhl and Miller, the latter being the adjuster who handled the loss between plaintiff and the insurance company. Ruck-stuhl had been in the new and used car business and testified that he was familiar with the value of automobiles, although he admitted he had never seen plaintiff’s car. In testifying to the cash value of the automobile as of November 1949 he referred to two books or manuals published for the convenience of automobile dealers and financing institutions, which are in evidence. These books are only guides, but Ruckstuhl stated that they were used extensively in arriving at “the original selling cost, its present-day selling cost, or its present-day selling price, its present-day loan value and its present-day average retail price, or as-is price.” The quotation on 1947 Buicks, of the same model as plaintiff’s, was listed at a $940 cash value, an average retail value of $1,410, and an “as is” value of $1,240. Ruckstuhl testified that between 1948 and 1949 the prices of secondhand cars were going “down” and further that the car suffered some depreciation between the time plaintiff acquired it and the date on which the loss occurred.
Miller, the adjuster, after ascertaining the type and general condition of the automobile by interrogating plaintiff, consulted the handbooks referred to by Ruckstuhl in order to get an idea of its cash value. Miller also interviewed used car dealers for the purpose of acquiring information respecting the. us.ed car market to. compare prices with the figures set forth in the handbooks. He arrived at the conclusion that plaintiff’s loss was $1,475, a figure higher than shown in the handbooks, and the insurance company remitted that amount to plaintiff.
Of course, we are fully cognizant that the price manuals are nothing more than guides to those who deal in automobiles, and could not possibly quote with any exactitude the valuation of a particular automobile, because, as every one knows, *818 some cars may be m better condition, mechanically and otherwise, than others of the same age.
However, Miller did not rely solely on the quotations from the books, but made independent investigation into the then prevailing used car market, and on this basis determined plaintiff’s loss, and we cannot say that the adjustment made was not an equitable one. On the other hand, Man-nino’s testimony, given more than a year after the loss, was based only on his recollection of what used cars were being sold for in November 1949. His records could have substantiated his testimony, ■ but whereas they were not produced, we do not attach a great deal of weight to his evidence.
Therefore, for the above and foregoing reasons, the judgment appealed from is affirmed.
Affirmed.