169 So.2d 6 (1964)
ZURICH INSURANCE COMPANY, Plaintiff-Appellee,
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 10241.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1964.
Rehearing Denied December 1, 1964.
*7 Carl F. Walker, Monroe, for Grain Dealers Mut. Ins. Co., and James Elton Frasier, defendants-appellants.
Davenport, Farr & Kelly, Monroe, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
The basis of this action is an assignment of a claim for damages in the sum of $534.47, arising out of an automobile accident of December 12, 1962. Made defendants were James Elton Frasier and his public liability insurer.
From a judgment in plaintiff's favor for the sum of $484.47, defendants appealed. Plaintiff has answered the appeal and prayed that the award be increased by $50.00 to the amount originally claimed.
Two questions are presented on this appeal: one relates to the question of fault as to the occurrence of the accident and the other to the validity of the assignment.
On the occasion of the accident, Dr. Lamoyne C. Bleich, a resident of Ruston, drove his automobile to Jim Paynter Motor Company, located on East Georgia Avenue in the City of Ruston, for minor repairs. In the course of its business or custom of furnishing transportation to those whose cars were being serviced or repaired by this concern, an employee, Franklin David Kelley, was sent to carry Dr. Bleich to the Holiday Inn. The employee of the motor company, while returning to his employer's place of business, was involved in an accident on East Georgia Avenue. In the vicinity of the accident, East Georgia Avenue, a segment of U. S. Highway 80 as it traverses the City of Ruston, is a 4-lane highway with two lanes for travel in each direction. Kelley was proceeding in the right, westbound traffic lane at a speed of approximately 20-25 m. p. h. James Elton Frasier was, at the same time, likewise proceeding westward, but in the inner, or left, westbound traffic lane slightly ahead of Kelley. In front of Frasier was a slow-moving truck. Without seeing Kelley's approach, Frasier began a sudden turn into the right, or outer, westbound traffic lane in front of Kelley, who thereupon applied his brakes and swerved his car in an effort to avoid a collision. In this attempt, Kelley, however, lost control of the car and ran into a power-line pole, inflicting the property damage to the car which constitutes the basis of this action.
The Highway Regulatory Act, LSA-R.S. 32:1 et seq., particularly § 79 thereof, requires that, on a multilane highway, a motorist shall drive his vehicle, as nearly as practicable, entirely within a single lane and shall not move therefrom until he has first ascertained that the maneuver can be made in safety. Thus, when a motorist is traveling on a multilane highway and changes from one lane to another, the burden is upon such motorist to ascertain that the movement intended can be made in safety and without interference with the normal movement of overtaking traffic. Blanchard v. Hardware Mutual *8 Casualty Company, 153 So.2d 517, La.App., 1st Cir. 1963; Fendlason v. Allstate Insurance Company, 136 So.2d 814, La.App., 1st Cir. 1961 (writs denied).
Moreover, the general rule is that a motorist attempting to turn from a direct line must ascertain that such movement can be made safely and without endangering overtaking traffic. Taylor v. Hynes, 147 So.2d 432, La.App., 2d Cir. 1962; Ruple v. Travelers Indemnity Company, 129 So.2d 240, La.App., 2d Cir. 1961.
The record in the instant case leaves little room for doubt, if any, that Frasier, before attempting to change his course of travel, did not make proper observation as to traffic conditions. Admittedly, Frasier, after commencing the turn, heard the brakes of the Bleich vehicle squeal, whereupon he turned back to his left.
Applicable here is the rule that a motorist is charged with seeing what he could have seen by the exercise of due diligence, which duty never ceases. Russell v. Bondi, 106 So.2d 119, La.App., Orleans 1958; Howard v. Great American Indemnity Company, 106 So.2d 539, La.App., 2d Cir. 1958; Pardue v. Norred, 95 So.2d 363, La. App., 2d Cir. 1957.
The facts, viewed in the light of the aforesaid legal principles, can lead to no conclusion other than that Frasier was negligent, and that his negligence was the cause of the accident.
The factual background of the assignment and the reasons for its execution appear appropriate. Jim Paynter Motor Company had a garage keepers' public liability and property damage policy with plaintiff as its insurer at the time of the accident. Inasmuch as Paynter's employee was absolved of fault, the public liability features of the policy have no application. However, it may be noted there was attached to the policy an endorsement by which the insurer obligated itself to pay collision claims when liability is, by law, imposed upon the assured. No fault as to the collision existing in its employee, no liability was imposed by law upon Jim Paynter Motor Company to repair the damage or to compensate Dr. Bleich therefor. From this, it necessarily follows, under the terms of the policy to which we have referred, there was no obligation upon plaintiff, the motor company's insurer, to pay the damages sustained to Dr. Bleich's car. However, laboring under a mistaken belief that collision coverage was afforded under the terms of its policy, plaintiff paid Jim Paynter Motor Company for the repairs to the damaged car. Thereafter, Dr. Bleich received the benefit of this payment in connection with a trade-in in the purchase of a new car.
Subsequent to these events, Bleich executed the assignment to plaintiff which constitutes the basis of this action. The language of this assignment, executed before a notary public under date of November 12, 1963, is as follows:
"This is to certify that on or about December 12, 1962, at approximately 12:00 a. m., a 1961 Dodge Lancer owned by the undersigned was being driven by Franklin D. Kelly, an employee of Jim Paynter Motor Company, [and] was involved in an accident. The other party involved in said accident was a vehicle being driven by James Elton Frasier of Ruston, Louisiana. The damages to my vehicle were in the amount of $534.47, and this amount was paid by the Zurich Insurance Company. In consideration of this payment, I hereby assign all rights to the Zurich Insurance Company."
Defendants' objections to the validity of the assignment are twofold: one phase of which relates to the fact of its execution after the assignor had received from the assignee payment for the damages done, and the other to the fact that the assignee paid the damages sustained to the assignor's car through error.
Defendant-insurer's position as to the validity of the assignment is untenable. Nowhere has it alleged or contended, nor *9 does the record otherwise indicate, that it has been or would be prejudiced by the assignment such as through the possibility of being required to pay its obligation twice.
The rule is well established in the jurisprudence of this State that neither the validity nor the consideration of a transfer or assignment of a debt can be questioned by the debtor in a suit by the assignee unless he can show prejudice. Bonner v. Beaird, 43 La.Ann. 1036, 10 So. 373, 374 (1891); Coco v. Calliham, 21 La.Ann. 624 (1869); Union Bank of Louisiana v. Succession of Ross, 21 La.Ann. 513 (1869).
For example, it was stated in Bonner v. Beaird, supra:
"In business transactions no particular form and specific instrument is required in the transfer or assignment of a debt. The assignment or transfer need not be in writing. `It has been decided that the judgment debtor will not be heard in charging the nullity and simulation of the transfer by the original creditor, unless he shows, not only that there was fraud between the contracting parties, but that he was injured thereby. Unless the debtor has equities which could be pleaded against the original creditor, he is without interest to inquire into the transfer.' There is an unbroken line of authorities maintaining that principle. Gray v. Trafton, 12 Mart. (La.) 703; Succession of Delassize, 8 Rob. (La.) 259; Long v. Klein, 35 La.Ann. 384; Stockmeyer v. Oertling, 38 La.Ann. [100] 101."
See, also: National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234, 242 (1925); Smith v. Richland Compress & Warehouse Co., 153 La. 820, 96 So. 668 (1923); and the authorities therein cited.
As pointed out in the Smith case, supra, all the defenses which were available to defendant-insurer against Dr. Bleich and the Jim Paynter Motor Company were open to it in this case. It has suffered no injury by having the claim presented in its present form. Therefore, it is without interest to inquire into the nature of the transaction between the aforesaid parties. Plaintiff, having the legal title to the claim, by its assignment from Bleich, could sue for its own account or for whom it pleased. The placing of title in its name by the assignment was an implied authority to bring an action on the claim, and, as heretofore pointed out, while defendant could not be deprived of its defenses against the assignor of the claim, there is no pretense that such has resulted in this case.
The contention lastly asserted by defendants, that plaintiff may not recover an erroneous payment made through its own negligence, is without application here where plaintiff seeks to collect a claim under an assignment. Cited in support of defendants' position are the cases of Carey v. Commonwealth Building & Loan Ass'n, 145 La. 1, 81 So. 734 (1919); Metropolitan Life Ins. Co. v. Mundy, 167 So. 894, La. App., 1st Cir. 1936; Pennsylvania Casualty Co. v. Brooks, 24 So.2d 262, La.App., 1st Cir. 1945.
In Central Surety & Ins. Corp. v. Corbello, 74 So.2d 341, 344, La.App., 1st Cir. 1954, the court distinguished the authorities cited from a case factually similar to the instant case. There, an insurer was permitted to recover payment made in a tort claim under the mistaken belief that the insurance policy was in force, whereas, at the time of the accident, it had expired. With reference to the authorities relied upon by the defendant, the court stated:
"We have reviewed our decisions in the above referred to cases and find neither of them to be controlling here. While we did state in the Brooks case that recovery would be denied when the claim was paid as the result of negligence, it must be borne in mind that the decision there merely sustained an exception of no cause of action filed in defense to an action by a liability insurer *10 against its former insured to recover money erroneously paid to third persons. Nor do we find the Mundy case to be controlling for there the action was not by the insurance company against its insured, but against a third party, an attorney who had received his fee from the proceeds of a life insurance policy erroneously paid."
The basic law is that one is obligated to restore that which was unduly received. LSA-C.C. Art. 2301 provides:
"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
The benefits received by Dr. Bleich were unduly received when coming from one not obligated to pay and who paid under the mistaken belief or assumption that it was so obligated. The benefits thus received by Dr. Bleich may be said to have been restored in the form of an assignment of his claim for damages.
Moreover, there is a right to reclaim that which has been unduly paid. LSA-C.C. Art. 2302 provides:
"He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."
An observation made in the Corbello case, supra, is very appropriate under the similar state of facts of the instant case. There, it was stated:
"This action, as we view it, is one which is sanctioned by Articles 2301 et seq. of the LSA-Civil Code and particularly Art. 2302, which provides that `He who has paid through mistake, believing himself a debtor, may reclaim what he has paid'. It is obvious, as we have previously pointed out, that payment here was made through error and we fail to see how the question of negligence on the plaintiff's part in making payment should control his right of recovery. The defendant has admittedly received a large sum of money which, as we have found, was not due him. There is nothing in the record which would tend to show that he was injured or damaged, in any way as the result of receiving the money. Under these circumstances we do not think he should be allowed to capitalize upon and be enriched by the error made by the plaintiff."
For these reasons, we conclude that plaintiff's recovery was correct and proper. However, its assignment covered Bleich's entire claim. The action was predicated, as heretofore indicated, upon the assignment and not upon the provisions of an insurance contract providing for a limited recovery dependent upon a specified deduction. Recovery should, therefore, be had for the full amount of the claim.
Therefore, the judgment appealed is amended by increasing the principal of the award to $534.47 and, as thus amended, is affirmed at defendants-appellants' costs.
Amended and affirmed.