178 So.2d 464 (1965)
Elie O. LAVILLE
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY et al.
No. 6433.
Court of Appeal of Louisiana, First Circuit.
July 1, 1965.
Rehearing Denied September 27, 1965.
*465 Edward W. Gray, of Percy, Macmurdo & Gray, Baton Rouge, for appellant.
A. J. Spedale, Tom F. Phillips, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
*466 Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a tort action brought on behalf of plaintiff, Elie O. Laville, to recover damages for personal injuries, property loss and medical expense sustained and incurred as the result of an intersectional automobile accident. The sole issue before the court on appeal is one of quantum, liability for the accident being admitted by defendant, Hartford Accident and Indemnity Company, insurer of the offending motorist, Fernand L. Guidry.
The learned trial court rendered judgment in favor of plaintiff in the following amounts: $3,000.00 for physical pain and suffering; $422.89 lost wages; $1,150.00 for the total loss of plaintiff's 1959 Model Ford automobile; $254.00 covering certain medical and special damages, and fixed the fees of two medical experts called by plaintiff in the sum of $50.00 each.
Defendant has appealed the decree of the trial court praying that the awards for physical pain and suffering, wages and property damage be reduced to $1,000.00, $162.65 and $820.00, respectively. Plaintiff has answered the appeal praying for an increase in said awards.
The record reflects that plaintiff was approximately 59 years of age on March 7, 1962, the date of the accident. Immediately following the mishap, appellee was taken to the emergency room of Our Lady of the Lake Hospital, Baton Rouge, Louisiana, where he was attended by his nephew, Dr. Louis P. Laville, Jr., a General Practitioner. Plaintiff's chief complaints were of pain in the chest, left knee and right eye. X-rays ordered by Dr. Laville revealed a small non-displaced linear fracture of the left fourth rib with no lung involvement. Further examination disclosed mild tenderness in the cervical and lumbosacral areas. Plaintiff also sustained a laceration on his nose and his eyes were observed to be swollen as the result of numerous facial contusions and bruises, the more severe injury being in the area of the right eye. Swelling in both knees accompanied by bruises and contusions of the shins was also noted. Dr. Laville prescribed analgesics and diathermy treatments. He did not consider it necessary to place plaintiff in traction for the cervical and back injuries nor did he apply a cast or tape plaintiff's chest to relieve the fractured rib which he described as a "hairline" or "incomplete fracture." Two days following the accident, plaintiff visited Dr. Laville in the latter's office. On this occasion it was noted plaintiff still complained of chest pains, discomfort in the neck, lumbosacral region and left knee. Dr. Laville also found discoloration over the right eye and minimal muscle spasm in the cervical area. On March 15, 1962, plaintiff returned to Dr. Laville who noted substantially the same symptoms as before but with some improvement. Thereafter Dr. Laville saw plaintiff on April 21, 29 and 30, May 11 and 24, June 29 and July 18. On each visit progressive improvement was observed although not to the extent Dr. Laville had anticipated. In particular, plaintiff continued to complain of pain in the neck, back and right hip.
In essence Dr. Laville testified that plaintiff's fractured rib healed normally in about six to eight weeks from the date of the accident without residual disability. In late March he recommended that plaintiff attempt to resume his employment as traveling salesman. When plaintiff visited Dr. Laville on March 15, 1962, examination disclosed tenderness in the cervical area but no other objective symptoms. By April 30, 1962, all objective symptoms disappeared but on June 12, 1962, Dr. Laville referred plaintiff to Dr. Richard B. Means, Jr., Orthopedist, because of plaintiff's persistent complaint of pain in the low back and lower right extremity.
Dr. Means testified he examined plaintiff June 12, 1962, pursuant to referral by Dr. Laville. His examination disclosed no objective findings attributable to the accident *467 X-rays taken by Dr. Means revealed a questionable fracture of the fourth left rib which indicated that if that particular rib had been fractured it had healed without residual effect.
Plaintiff's testimony is substantially to the effect that following the accident he continuously suffered from pain in his chest, neck, lower back and, commencing approximately three weeks following the accident, pain in his lower extremities, particularly the right thigh and leg. Plaintiff concedes the chest and neck pains have subsided and presently cause him little, if any discomfort. According to plaintiff, he is still troubled by pain in his lower back and right leg and thigh to the extent he cannot drive his automobile without experiencing considerable fatigue and discomfort. Because of this condition, he maintains he was compelled to ultimately discontinue his occupation as traveling salesman.
In summation it may be stated that although plaintiff's injuries were not particularly severe, residual pain persisted therefrom for a number of weeks following the accident. The record discloses that whereas the rib fracture healed without complication, plaintiff experienced chest pains for approximately two and one-half months on the left side and approximately five months on the right side where his chest struck the steering wheel of his car. The whiplash type cervical injury sustained by plaintiff caused him pain for a period of about two months. It appears the effects of the lumbosacral injury persisted in that plaintiff continued to experience low back pain for several months following the accident. The clear impression to be drawn from the expert testimony is to the effect that the difficulty with plaintiff's right leg and thigh is due to sciatica, not the accident.
Counsel for appellant urges reduction of the award for pain and suffering to $1,000.00 on authority of Bloomquist v. Atchley, La.App., 150 So.2d 331, wherein a plaintiff who sustained a single broken rib was awarded the sum of $750.00, and Colton v. Hartford Fire Insurance Company, La. App., 135 So.2d 489, in which case an award of $2,000.00 was made for injuries allegedly more serious than those sustained by plaintiff herein.
We believe the injuries sustained by present plaintiff were considerably more extensive and severe than those involved in the Bloomquist case, supra. Considering all of the circumstances of the instant case, particularly that following the accident plaintiff was never thereafter able to pursue full time his occupation as salesman as hereinafter appears, we consider the award of $3,000.00 for pain and suffering neither excessive nor inadequate and affirm same upon authority of Gaspard v. LeMarie, 245 La. 239, 158 So.2d 149, and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
Considering now appellant's prayer for a reduction in the amount awarded plaintiff for lost wages, the record shows appellee was engaged as a salesman for a number of years preceding the accident. In December, 1961, plaintiff was employed as a vendor of specialty lubricants in which capacity he called upon large farmers, industrial plants and municipalities offering such prospective customers various oils, greases and lubricants for use in and maintenance of their specialized machinery and equipment. Upon being so employed, plaintiff underwent a four weeks training and indoctrination period during which he became familiar with his employer's products and sales procedure. Following his training, plaintiff began selling on a commission basis in January, 1962, but admittedly he was ill during one week of that month. Plaintiff's W-2 income tax form for the year 1962, shows that during said calendar year he earned commissions in the aggregate of $596.42 which accords with appellee's verbal testimony that he earned approximately $600.00 during the year. According to plaintiff he earned approximately $100.00 in commissions during January, 1962, (some of which might have resulted from orders *468 taken during December, 1961), and approximately $400.00 during February, 1962. The remaining approximately $96.42 earned by plaintiff with his said employer was realized from sales made between the time plaintiff attempted to return to work on the advice of Dr. Laville in late March, 1962, and August, 1962, when plaintiff voluntarily terminated his position as salesman. In substance plaintiff stated he was able to work only part time because of the pain he experienced on driving his automobile. He further testified that after several attempts at resuming his occupation as salesman it became evident he could no longer pursue such calling because driving was too strenuous and he was no longer able to lift and carry the heavy sample cases in which he transported and displayed his wares. Although plaintiff stated he believed he had certain records other than his W-2 form which would disclose his commissions each month, he did not produce them at the trial. Except for plaintiff's unsupported oral testimony we have only the aforesaid documentary evidence which indicates his total earnings for 1962 in the sum of $596.42. Moreover, plaintiff's testimony clearly reveals his commissions were not net as he defrayed his own travel expense from his earnings.
It is settled law that loss of earnings or profits from plaintiff's business, occupation or profession occasioned by personal injuries resulting from an accident is recoverable in a tort action as an element of damages. Jenkins v. Audubon Insurance Company, La.App., 110 So.2d 221. While a plaintiff's detailed and uncontradicted testimony regarding his loss of earnings may per se constitute proof of such loss under certain circumstances, nevertheless a general estimate by plaintiff as to his loss of earnings is not sufficient proof of such loss where corroborative evidence is shown to be available but is not produced by plaintiff. Jenkins v. Audubon Insurance Company, supra, and cases therein cited. The present case falls squarely within the rule of the Jenkins case (and authorities therein cited). We conclude, therefore, the trial court erred in assessing the award for lost earnings and that said award must be reduced as will hereinafter appear.
The learned trial court did not favor us with written reasons for judgment therefore we are unaware of the basis on which he concluded plaintiff was entitled to lost wages in the sum allotted. The record, however, preponderates in favor of the conclusion that the sum of $596.42 earned by plaintiff was earned in a period of approximately 16 weeks inasmuch as plaintiff worked from January 1, 1962, to the date of the accident March 7, 1962, a period of about 9 weeks. Thereafter, it appears plaintiff worked for 2 weeks in late March and early April and five weeks during May and June. Plaintiff testified he did some part time soliciting in July and August but his testimony in this regard is too vague to admit of even an estimate. Under such circumstances we feel that to determine plaintiff's lost wages, the average of his weekly earnings while employed should be the basis of recovery. Breaux v. Valin, La.App., 138 So.2d 405. We conclude, therefore, plaintiff has established a weekly wage of 1/16 of $596.42 or the sum of $37.27. It is to be noted, however, plaintiff conceded his commission earnings were not net but from such source he was required to defray all travel expense. Therefore, we believe a deduction of 10% or $3.72 will more accurately reflect plaintiff's net weekly earnings, thus arriving at a net loss of $33.55 during each week appellee was unemployed because of his injuries.
Astute counsel for appellant maintains plaintiff should recover for only five weeks loss of wages whereas counsel for appellee suggests an allowance of 9 months lost wages subject to certain deductions for expenses. Our careful consideration of the record impels the conclusion neither suggestion would do justice between the parties. Plaintiff's testimony regarding his attempts to work part time following the accident *469 leave much to be desired from the standpoint of clarity and certainty. Still, we are convinced plaintiff has established beyond doubt his entitlement to some recovery for lost wages. We conclude the ends of justice will be served by an allowance of 8 weeks wages at the rate of $33.55 or an aggregate of $268.40.
There remains for consideration the award of $1,150.00 for the loss of plaintiff's automobile.
Charles L. Browning, testifying on behalf of plaintiff stated that he is presently sales manager for a Ford dealer and has had more than 15 years experience in buying, selling and trading cars. He was familiar with plaintiff's automobile in that he had appraised it shortly before the accident when plaintiff attempted a trade with Browning's employer. According to Browning, the vehicle was in excellent condition, mechanically and otherwise, for a car of its make and model. Browning stated the car was in far better than average condition and would command a premium price on the market because it was unusually clean and well maintained. He knew the vehicle had new tires and he considered it to be worth between $1,450.00 and $1,600.00.
On the other hand, appellant produced one Cecil Prewitt, an expert automobile appraiser with many years appraisal experience but with no sales experience whatsoever. Prewitt stated that his appraisals were made for insurance companies predicated upon the advertised prices of used cars appearing in the newspapers which he consulted every day. He agreed with Browning that the vehicle in question was extraordinarily clean and in excellent mechanical condition. However, based on his appraisal experience, he valued the vehicle at $25.00 above the National Automobile Dealers Association blue book quotation of $1,095.00, thus arriving at an appraisal of $1,120.00. Prewitt did not consider the presence of new tires added to the value of the automobile.
It is settled jurisprudence that price manuals are merely aids to those who deal in automobiles and do not necessarily control valuation of a particular vehicle inasmuch as it is common knowledge some vehicles may be in better condition, mechanically and otherwise, than others of the same make and model. Engolia v. Houston Fire & Casualty Insurance Co., La.App., 65 So. 2d 814; Ward Baking Company, Inc. v. City of New Orleans, La.App., 94 So.2d 720.
Considering the circumstances shown, we conclude our learned brother below correctly ascribed greater weight to Browning's testimony and fixed the value of plaintiff's automobile at the sum of $1,450.00.
However, in assessing damages to the vehicle in the sum of $1,150.00 our esteemed colleague fell into error. The record discloses the vehicle could have been repaired for the sum of $1,064.39 but instead of repairing the vehicle, appellee traded it in on a new automobile and received an allowance of $300.00. Where a vehicle is obviously totally destroyed or so badly damaged the cost of repair exceeds its value, the loss to the owner is determined by ascertaining the value of the vehicle on the date of the accident less its salvage value, if any. Greenburg v. New Orleans Public Service, La.App., 74 So.2d 771. Where, however, the cost of repair is less than the value of the vehicle the measure of damages is the cost of repair. In the instant case, therefore, plaintiff may recover only the cost of repairing his vehicle, namely, the sum of $1,064.39.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court be and the same is hereby amended by reducing the award to plaintiff, Elie O. Laville, for lost wages from the sum of $422.80 to the sum of $268.40 and further amended by reducing the award to said plaintiff for damages to his automobile from $1,150.00 to the sum of $1,064.39.
*470 It is further ordered, adjudged and decreed that except insofar as the same is herein amended and modified, the judgment of the trial court in all other respects shall be and the same is hereby affirmed. Costs of this appeal to be paid by plaintiff-appellee, all other costs to be paid by defendant-appellant.
Amended and affirmed.