276 So.2d 708 (1973)
Warren T. BAILEY
v.
Robert P. MOORE et al.
No. 9274.
Court of Appeal of Louisiana, First Circuit.
March 19, 1973.
Rehearing Denied May 14, 1973.
*709 C. Alvin Tyler, Baton Rouge, for appellant.
Aubrey L. Moore, Glusman, Ward, Moore & Lopez, Baton Rouge, for defendants-appellees Robt. P. Moore, Partee and Emp. Comm. Union Ins. Co.
Eugene R. Groves, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellee Gulf States Util. Co.
*710 Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
Plaintiff, Warren T. Bailey (Appellant) appeals from a judgment rejecting his claim for damages sustained when his 1964 pickup truck was allegedly run off a multi-laned highway while attempting to pass a vehicle being driven by defendant, Robert P. Moore, who reputedly abruptly changed lanes without prior signal. We reverse and render judgment for Appellant.
The accident occurred at 10:00 A. M., May 18, 1970, a clear dry morning. Appellant was driving his vehicle northerly along Airline Highway, a four-lane, north-south highway in the City of Baton Rouge, Louisiana. The two northbound lanes of travel of the highway are separated from the southbound lanes by a rather wide neutral ground on which are situated numerous light poles belonging to Gulf States Utilities Company (Gulf States). Defendant Moore, employee of Partee Flooring Mill (Partee), was driving his employer's large tandem tractor-trailer truck, loaded with flooring weighing approximately 70,000 pounds, northerly in the right or outside lane of travel. The truck had an overall length of 52 feet. The collision occurred just north of the intersection of Prescott Road and Airline Highway on a straight segment of Airline Highway. The left rear of the Partee truck struck the right front and side of Appellant's vehicle forcing it off the highway onto the neutral ground. In traversing the neutral ground, Appellant's truck damaged one of Gulf State's light standards. Appellant's vehicle then crossed both southbound lanes of travel and came to rest in a ditch on the south side of Airline Highway.
Appellant is an uninsured motorist. Following the accident, he executed an agreement with Gulf States wherein he agreed to pay Gulf States the sum of $472.82 to restore the damaged pole. On this agreement, Appellant has paid the sum of $20.00, leaving a balance due of $452.82. Appellant instituted this action against: (1) Moore; (2) Partee; (3) Employers Commercial Insurance Company (Employers), Partee's insurer, and (4) Gulf States, seeking damages for personal injuries, medical expense, loss of wages, the value of Appellant's truck, and rescission of the agreement with Gulf States. Alternatively, Appellant prayed for judgment against Moore, Partee and Employers for such sum as Appellant might be condemned to pay Gulf States, and, in the further alternative, for contribution from said defendants.
Gulf States answered by way of a general denial, and also reconvened for judgment against Appellant in the sum of $452.82, the amount due under the installment agreement executed by Appellant. Alternatively, Gulf States prayed for judgment against Appellant in tort.
Defendants, Moore, Partee and Employers filed general denials and alternatively asserted Appellant's contributory negligence.
The trial court found that Appellant failed to establish Moore's negligence was the sole proximate cause of the accident. The court further concluded that if Moore was negligent, Appellant was also negligent, and that Appellant's negligence barred his recovery from Moore, Partee and Employers. In addition, the trial court rendered judgment recognizing Appellant's liability to Gulf States under the agreement to pay.
Appellant contends the trial court erred in rejecting his claims for personal injuries, medical expense, loss of wages and damages to Appellant's vehicle. Appellant also contends the trial court improperly rejected his demand for rescission of his agreement to pay Gulf States. Appellant contends the lower court erred in dismissing his demand for judgment against Moore, Partee and Employers for any *711 amount Appellant was condemned to pay Gulf States, and in the further alternative, for contribution from said defendants. Appellees, Moore, Partee and Employers, concede if Appellant and Moore be adjudged joint tort-feasors as regards the damages sustained by Gulf States, contribution is due Appellant. They also concede that if Moore be adjudged solely at fault, Appellant is entitled to indemnification for the amount in which Appellant is obligated to Gulf States under the agreement.
The accident was investigated by Patrolman James Wilkinson, city policeman, who found 28 feet of skid marks made by Appellant's vehicle in the inside lane of travel prior to the point where the vehicle struck the curbing and went onto the neutral ground. No skid marks were left by Moore's truck. The officer also found that plaintiff's truck traveled 44 feet on the neutral ground before striking the light pole. A check of Appellant's truck revealed the vehicle had no brakes following the accident. Officer Wilkinson concluded that in view of the skid marks, Appellant's brakes were damaged in the accident. He found light damage to the front of Appellant's truck and very light damage to the left rear wheel of Moore's large trailertruck. He stated the maximum legal speed in the area was 50 miles per hour. He did not issue a citation to either driver.
Appellant testified he was traveling northerly in the inside lane of travel, at a speed of approximately 45 miles per hour, behind a blue pickup truck also traveling in the inside lane. Ahead of the blue pickup, defendant Moore was proceeding in the outside lane at about 30 miles per hour. The driver of the blue pickup would not vacate the passing lane despite Appellant's repeated horn blowing. Appellant, therefore, passed the blue pickup in the outside lane, and again drove into the passing lane preparatory to passing Moore. After Appellant regained the passing lane, the blue pickup truck, which was then to Appellant's rear, drove into the outside lane. Upon regaining the passing lane, Appellant was still about 100 feet behind Moore who was still in the outside lane. As Appellant was overtaking Moore to pass, Moore suddenly drove into the inside lane without signaling his intention to do so. Appellant stated he hit his brakes and veered to the left because he did not want to run under a load of lumber. The left rear wheel of the trailer struck Appellant's car along its right front fender and door. Examination of his vehicle after the accident disclosed brake fluid pouring out of a ruptured brake line.
Moore's version of the incident was that he was proceeding in the outside lane at a speed of about 30 miles per hour. About 50 feet prior to his reaching the intersection with Prescott Lane, he switched to the passing lane because a motorist had stopped ahead in the outside lane to make a right turn off Airline Highway. Before entering the inside lane, Moore checked his rear view mirror and noted the blue pickup in the outside lane immediately to his rear. Behind the blue pickup, he saw Appellant proceeding in the inside lane. When Moore pulled into the inside lane, Appellant's vehicle was approximately 150 feet behind in the inside lane. Moore could not recall whether he activated his turn signal before driving into the passing lane, but stated that it was his usual custom to give such a signal. He continued through the intersection in the passing lane and was unaware of an accident until he looked in his rear view mirror and saw a light pole fall. He felt no impact whatsoever. He was unaware he had been involved in an accident, but stopped merely to see what assistance he might render.
The accident was also witnessed in part by James A. Lindsey, who was proceeding in the opposite direction. Lindsey did not see the collision between the two vehicles. He did, however, see Appellant's truck when it hit the curb following which it entered the neutral ground and struck the light pole. As Appellant's truck crossed the southbound lanes, Lindsey reduced the *712 speed of his vehicle to avoid contact with Appellant's truck.
The trial court concluded that the accident happened because Appellant passed the blue pickup truck on the right side at which time Moore lost sight of Appellant's vehicle. He also concluded that both Moore and Appellant started to enter the inside lane at the same time, and that Appellant gambled and lost. The evidence does not support this finding. Both Appellant and Moore testified that Appellant was in the inside or passing lane ahead of the blue pickup truck when Moore switched lanes.
In a rear end collision case, as defendants suggest this was, the following motorist must exculpate himself from the inference of negligence. The presumption, however, does not apply where a motorist is struck from the rear as a result of his making a sudden, unsignaled lane change, as plaintiff suggests was the case herein. Grinnel Mutual Reinsurance Company v. Rich, La.App., 251 So.2d 450.
We reject defendants' contention that this incident involves a rear end collision. Here Appellant was in the act of passing a vehicle traveling in the outside lane of two northbound lanes of travel. That Appellant was in the passing lane when an emergency occurred is undeniable from the skid marks found therein by the investigating officer. The record also reflects that the damage to Appellant's vehicle was along the right front fender and door, indicating a sideswiping contact rather than a rear end collision in which the front of Appellant's truck hit the rear of the Moore vehicle. For the right side of Appellant's truck to be struck by the left rear of the Moore vehicle while Moore's truck was in the inside lane, Appellant's vehicle would have had to be at least partially on the neutral ground at the instant of impact. The physical facts show that this did not occur because Appellant's truck left 28 feet of skid marks in the inside lane before it struck the curb and went upon the neutral ground.
LSA-R.S. 32:79 (Highway Regulatory Act) provides that a motorist shall exercise extreme care in changing lanes on a multilaned highway. The burden is upon such motorist to ascertain that the maneuver intended can be made in safety and without interference with the normal movement of overtaking traffic. Zurich Insurance Co. v. Grain Dealers Mutual Ins. Co., La.App., 169 So.2d 6. While this requirement does not relieve the motorist traveling straight ahead of the obligation of keeping a proper lookout, having his vehicle under control and avoiding foreseeable dangers, the statute does expressly place greater responsibility upon the driver who deviates from a straight course and moves across parallel traffic lines. Canzoneri v. Connecticut Fire Ins. Co. of Hartford, La.App., 163 So.2d 834.
Moore concedes he saw Appellant in the passing lane approximately 150 feet to Moore's rear when Moore began to change lanes. It is obvious that Moore misjudged both the speed of Appellant's vehicle and the distance which separated the trucks. It appears equally evident that Appellant reacted to the emergency by applying his brakes when he observed Moore start to change lanes.
We find that Appellant was free of negligence, and that the accident was due solely to Moore's negligence in failing to ascertain that it was safe for him to change lanes before attempting to do so.
As regards Appellant's personal injuries, it appears that Appellant's head struck the top of the truck cab when the vehicle hit the curb and Appellant's arm became entangled in the steering wheel. Immediately following the accident, Appellant felt somewhat faint. Four days following the accident, on May 22, 1970, plaintiff consulted Dr. James Lorio, who found plaintiff suffering with back pain. Dr. Lorio noted spasm of the right lumbar *713 muscle group. He diagnosed Appellant's condition as mild lumbosacral strain. Dr. Lorio prescribed heat, rest and pain relievers. Plaintiff did not return to Dr. Lorio until May 12, 1972, for examination in preparation for trial. On this latter occasion, Dr. Lorio found Appellant wearing a corset provided by an acquaintance of Appellant. In essence, Dr. Lorio found Appellant suffering from no objective symptoms related to the accident. Dr. Lorio noted that Appellant had a one-inch pelvic tilt which was attributable to a natural deformity. In Dr. Lorio's opinion, this condition could be remedied by Appellant wearing an elevated heel. The one visit by Appellant to Dr. Lorio for treatment is the sole instance on which Appellant sought medical aid. Inasmuch as Appellant had no complaint other than mild back strain four days following the accident, and sought medical aid on only one occasion, we deem that an award of $300.00 for physical pain and suffering is adequate compensation therefor.
Dr. Lorio presented Appellant a bill for $60.00 covering both examinations. Since the latter examination was for evaluation only, Appellant is not entitled to recover the cost thereof. We therefore allow Appellant recovery of $30.00 for medical expense.
Appellant's claim of lost wages in the sum of $1,250.00 is not supported in the record. Appellant testified he was employed as a mechanic at an hourly rate of $2.50 on a regular 40 hour per week basis, at which rate his earnings amounted to $100.00 weekly. With overtime, however, he earned an average of about $150.00 weekly. He testified as to his inability to work, but in this regard he is uncorroborated. Plaintiff also stated that following the accident, he could not work full time, and that his employer let him work two or three hours daily. Appellant failed to produce his employer to confirm these averments.
It is settled law that a claim for lost wages need not be established with mathematical certainty, but only by such proof as reasonably establishes the claim. A claimant's own testimony may suffice if it appears reasonable under the circumstances. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151. Where, however, corroborating evidence is available, it should be produced. Craig v. Burch, La.App., 228 So.2d 723. We find Appellant has failed to establish lost wages in the manner required.
Although plaintiff prayed for damages in the sum of $877.50, for the total destruction of his vehicle, the sole evidence in support of this claim is Appellant's own testimony that the vehicle was worth $525.00. Appellant further testified that the right door was damaged, the brake line ruptured, and the radiator damaged. He also stated the only repairs made were to the radiator. His testimony implies that the vehicle is presently in use. Although plaintiff is an automobile mechanic, it does not appear that he is an expert appraiser of automobiles or that he is knowledgeable and experienced in this area. It is well established that where an automobile is damaged to the extent the repairs exceed its value, the measure of damages is the market value of the vehicle on the date of the accident less its salvage value, if any. Bernard v. Fidelity & Casualty Company of New York, La.App., 186 So.2d 904. If the cost of repair is less than the value, the measure of damages is the cost of repair. Laville v. Hartford Accident and Indemnity Co., La.App., 178 So.2d 464. Appellant has not established either the value of the truck before the accident, the cost of repairs, or the salvage value by competent evidence. Also for lack of substantiation, we reject Appellant's claim for alleged tow charges in the sum of $25.00, and telephone calls aggregating $6.50.
While Appellant asks for release from the agreement he executed in favor *714 of Gulf States, he cites no legal reason therefor. In Appellant's brief, it is not contended the agreement is invalid for any reason. Appellant maintains the issue is not whether the agreement is binding, but rather who owes Gulf States for the damage to its property? Under the circumstances, Appellant's liability under the agreement must stand.
Since defendants, Moore, Partee and Employers, concede liability to Appellant for the damage to Gulf States' light pole, if Moore be found guilty of negligence proximately causing the accident, Appellant is entitled to judgment against said defendants in the amount due by Appellant to Gulf States.
It is ordered, adjudged and decreed that the judgment in favor of Gulf States against Appellant, Warren T. Bailey, in the sum of $452.82, together with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings, be affirmed.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing the demands of plaintiff, Warren T. Bailey, against defendants, Moore, Partee and Employers, for personal injuries and medical expense, be and the same is reversed and set aside, and judgment rendered herein in favor of plaintiff and against said defendants, Moore, Partee and Employers, in the full sum of Three Hundred Thirty and 00/100 ($330.00) Dollars, together with legal interest thereon from date of judicial demand, until paid.
It is further ordered, adjudged and decreed that the judgment rejecting and dismissing the demands of plaintiff, Warren T. Bailey, against defendants, Moore, Partee and Employers, for such amount as plaintiff might be cast to Gulf States, be and the same is hereby reversed and set aside, and judgment rendered herein in favor of plaintiff and against said defendants in the sum of Four Hundred Seventy-two and 82/100 ($472.82) Dollars, together with legal interest thereon from date of judicial demand.
It is further ordered, adjudged and decreed that, in all other respects, the judgment of the trial court is affirmed; all costs of these proceedings to be paid by defendants, Moore, Partee and Employers.
Reversed in part, affirmed in part, and rendered.