419 So.2d 92 (1982)
Chester Ray ELLIS, Plaintiff-Appellee,
v.
MFA MUTUAL INSURANCE COMPANY, et al., Defendant-Appellant.
No. 14935.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Writ Denied November 5, 1982.
*93 Minard & Evans by Cameron C. Minard, Columbia, for plaintiff-appellee.
Snellings, Breard, Sartor, Inabnett & Thrasher by Kent Breard, Monroe, for MFA Mut. Ins.
Samuel T. Singer, Winnsboro, for Woods.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is an action for property damage to a truck, penalties and attorney's fees. The plaintiff is Chester Ray Ellis, owner of the damaged truck. The defendants are Donald R. Woods, Frank B. Mayes and Countryside Casualty Company, Woods' insurer.[1]
Countryside appeals a judgment against it for $14,630.18, 12% penalties and attorney's fees of $2,000. Plaintiff's demands against Mayes and Woods were rejected.
On appeal Countryside sets out three assignments of error. Countryside contends the trial judge erred in: (1) finding the Ellis truck to be covered under its policy; (2) awarding excessive damages; and (3) finding its actions to be arbitrary and capricious and awarding penalties and attorney's fees.
Ellis answered the appeal seeking an increase in the award of attorney's fees and to have Woods held liable in solido with Countryside. Plaintiff originally sued Countryside's insurance agent, Mayes, apparently on the theory that he could be liable for failing to provide coverage on the Ellis truck, but he assigns no error on appeal directed to the trial judge's rejection of his demands against Mayes.
We amend and affirm.
THE FACTS
This suit occurred as a result of the activities of James Jesselink, plaintiff Ellis and defendant Woods.
In June 1979, Woods was engaged in the trucking business in Winnsboro, Louisiana. In connection with his business Woods owned two trucks, one of which he drove, and he employed Jesselink to drive the other. The truck Jesselink was employed to drive was insured for collision loss by Countryside.
At the time Jesselink went to work for Woods, he informed Woods that he desired to obtain his own truck and go into business for himself. To that end Jesselink had contacted Ellis about a 1973 International truck the latter had for sale.
On June 29, Jesselink was to haul a load of cotton from Mansfield to Winnsboro for Woods. However, on June 27 the truck Jesselink drove for Woods developed radiator trouble. It then occurred to Jesselink that the situation presented a good opportunity to test the International by using it to haul the cotton for Woods while his truck was under repair.[2]
*94 Woods agreed to Jesselink's suggestion and Ellis agreed for his truck to be used under these circumstances, provided insurance had been obtained on his truck. Jesselink spent much of the day on June 28 perfecting the arrangements.[3] Late that afternoon he picked up the International from Ellis and assured him that insurance had been obtained.
Throughout the day of June 28, Woods worked to correct the radiator problem on his truck. The old radiator was removed and late that evening a used radiator was installed and the truck was tested that evening and the next day, June 29.[4]
At approximately 4:00 a.m. on June 29, Jesselink left Winnsboro for Mansfield with plaintiff's truck and Woods' trailer to pick up the cotton. At the time of his departure he was unaware of the progress which had been made toward the repair of Woods' truck. The time required to install a functional radiator in the truck was probably less than expected because when Woods arrived in Monroe with the defective radiator, he found that it could not be repaired and therefore he purchased a used radiator and returned to Winnsboro with it and proceeded to install it in his truck. Under these circumstances there was no delay caused by waiting to have the defective radiator repaired.
Upon arriving in Mansfield, Jesselink loaded the cotton upon the trailer and commenced his return to Winnsboro. On the return trip the truck and trailer overturned. Plaintiff's truck was heavily damaged.
The plaintiff then brought this action. After a trial on the merits, the district judge found the truck to be covered under the Countryside policy as a temporary substitute automobile. He also found the insurer's refusal to pay to have been arbitrary and capricious and rendered the judgment complained of.
ASSIGNMENT # 1
Through this assignment Countryside attacks the trial judge's conclusion that the plaintiff's truck was a temporary substitute automobile. Countryside makes two arguments in support of this contention; first, that the Woods' truck was available for service on June 29 and, second, that Jesselink would have used Ellis' truck for this haul regardless of the availability of Woods' truck.
The policy contains the following definitions:
"(1) `Automobile' means a self-propelled, land motor vehicle with at least four wheels, not operated on rails or crawler treads, but does not mean (a) a farm type tractor or any other vehicle, equipment, or machinery designed for use principally off the public roads, or (b) a vehicle while located for use as a residence or premises.
. . . . .
(4) `Described automobile' means the vehicle described in the Declarations and includes a temporary substitute automobile as herein defined.
. . . . .
(12) `Temporary substitute automobile' means an automobile not owned in whole or in part by the named insured or any resident of the same household, while temporarily used with permission of the owner as a temporary substitute for the *95 described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."
The applicable coverage provisions reads as follows:
"1. Coverage F-Collision-The Company will pay for direct and accidental loss to the described automobile caused by collision between it and another object or by its upset, but only for the amount of each loss in excess of the deductible amount or percentage stated in the Declarations as applicable thereto. The deductible amount or percentage shall not apply to loss caused by a collision with another automobile insured by the Company."
This coverage was subject to a deductible of $250.00.
The substance of Countryside's first argument is that the Woods truck was actually available for service rather than withdrawn from normal use for one of the listed causes, and thus, the Ellis truck was not a temporary substitute automobile. The thrust of the second argument is that Jesselink would have used the Ellis truck regardless of the availability of the Woods truck and that, therefore, there was no substitution and the Ellis truck is not a temporary substitute automobile.
The first argument is a challenge to the trial judge's conclusion that Woods' truck was out of service. This is a factual conclusion which we may not disturb absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The evidence is that though the used radiator was installed on the afternoon before the accident, the testing was not completed until the next day, sometime after Jesselink had left Winnsboro. Adequate testing is an important and integral part of the repair or servicing of automobiles. Thus, we find no error in the trial judge's conclusion that the Woods' truck was out of service.
Countryside's second argument is that the Ellis truck was not a substitute for the Woods truck. This contention is not supported by the facts. Even though the substitution was not solely for the benefit of Woods,[5] it was not suggested until after his truck experienced mechanical problems. The contention that the Ellis truck would have been used even if the Woods truck had been repaired and fully tested by the time Jesselink departed for Mansfield, is mere speculation.
Normand v. Hertz Corporation, 254 La. 1075, 229 So.2d 104 (1969), relied on by Countryside is inapposite. There the insured's vehicle had not been removed from service or normal use. Instead his wife removed the vehicle from their residence in order to prevent her husband from using it.
Lincombe v. State Farm Mutual Ins. Co., 166 So.2d 920 (La.App.3d Cir. 1964), writ refused 246 La. 907, 168 So.2d 820 (1964), is not in conflict with our decision. There the court held only that when the policy requires that the owned auto be withdrawn from service for a specific listed reason in order for the vehicle substituted for it to be covered, the owned auto must be withdrawn from service for such cause in order for there to be coverage. Here the Woods truck was withdrawn for one of the reasons listed in the policy, namely, repair.
This assignment of error is without merit.
ASSIGNMENT # 2
Through this assignment of error Countryside contends that the award of $14,630.18 for damages to the truck is excessive.
The trial judge based the award on a repair estimate made by Scott Truck and Tractor on Jan. 3, 1980. Gene Sisk, the employee of Scott who made the estimate, explained that the estimate included the cost of a new cab as no suitable used cab could be located at the time the estimate was prepared.[6]
*96 At trial Sisk was shown photographs of an apparently suitable used cab located by Countryside's adjuster on Thursday before the trial which was held on May 11, 1981. Sisk testified the cab could be used at a cost of approximately $4,800 which would reduce the repair estimate by $6,780. Countryside contends that damages should have been assessed using the cost of the used cab.
In cases such as this where the cost of repair is less than the value of the vehicle the cost of repair is the correct measure of damages. Bailey v. Moore, 276 So.2d 708 (La.App. 1st Cir. 1973).
The trial judge's award of damages may not be disturbed on appeal absent a clear abuse of his much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
While we find no abuse of discretion in the trial judge's inclusion of the cost of a new cab in the award we do find clear abuse in other aspects.
That Sisk could not locate a used cab when preparing the Scott estimate shows there was no general availability of suitable used cabs. Further, there is no showing that the used cab located by Countryside is still available and there is no indication that Countryside took any steps to assure its availability. it is significant that Countryside located the used cab more than sixteen months after the Scott estimate was prepared. Therefore, an award based on the cost of a used cab would subject plaintiff's ability to have his truck repaired to the vagaries of the used parts market. There was no error in the use of the cost of a new cab in fixing the award.
The award includes $911.05 for towing and six months storage. Storage fees should be awarded only for a reasonable time which normally should not exceed fourteen days. Heider v. Employers Mutual Liability Ins. Co. of Wis., 231 So.2d 438 (La.App. 4th Cir. 1970); Adam v. English, 21 So.2d 633 (La.App.Orl.1945). The award of storage for six months is excessive and the sum of $250 is adequate for towing and storage for a reasonable period.[7]
ASSIGNMENT # 3
Through this assignment Countryside contends that the district judge erred in awarding penalties and attorney's fees. We agree.
LSA-R.S. 22:658 provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between *97 the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount...."
The trial judge found Countryside's refusal to pay arbitrary and capricious. In doing so he was clearly wrong.
Where there are serious factual issues as to liability and damages, penalties and attorney's fees should not be awarded. Menard v. Andrew Jackson Apartments, Inc., 225 So.2d 249 (La.App. 4th Cir. 1969); Trico Services Corporation v. Houston General Insurance Co., 414 So.2d 1313 (La. App.2d Cir. 1982).
Here there were serious factual issues as to the status of Woods' truck on the day of the accident and the cost of repair of plaintiff's truck. The award of penalties and attorney's fees in this case improperly punishes the insurer for seeking a resolution of those issues. Plaintiff's request for an increase in attorney's fees must be rejected as well.
We now address plaintiff's contention that he should also have judgment against Woods.
The facts here establish that there was a deposit between Ellis, the depositor, and Woods, the depositary. The deposit was established by the consent of both Woods and Ellis and the latter's delivery of the truck to Woods' employee, Jesselink. LSA-C.C. arts. 2930[8]; 2932.[9]
Though Woods contends that Jesselink's employment was terminated on June 28, we conclude that Jesselink was an employee of Woods on June 28 and the day of the accident. Jesselink had been employed by Woods for some time prior to the accident and he was engaged in hauling cotton for Woods at the time of the accident. He was not told of his alleged termination. Jesselink was also paid for his work on the day of the accident. All of these circumstances establish that Jesselink was Woods' employee on June 29.
A depositary owes a duty to preserve the deposit and if it is damaged the depositary bears the burden of showing his freedom of negligence. Segura v. United States Aircraft Insurance Group, 246 So.2d 880 (La.App.3d Cir. 1971), writ denied 258 La. 704, 247 So.2d 584 (1971); Alex W. Rothschild & Co., Inc. v. Lynch, 157 La. 849, 103 So. 188 (1925); Gulf & S.I.R. Co. v. Sutter Motor Co., 126 So. 458 (La.App.Orl. 1930).
Here the plaintiff's truck was damaged during its deposit with Woods. There is no showing that the damage was not occasioned by the neglect of Woods or his employee Jesselink for whom he is responsible. Rothschild; Gulf; supra. For these reasons the judgment should have been rendered against Woods as well as his insurer, and there should be judgment against Woods alone for that part of Ellis' loss not covered by the policy.
For the foregoing reasons we amend the judgment of the district court by recasting the third, fourth and fifth paragraphs to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, CHESTER RAY ELLIS, and against the defendants, DONALD R. WOODS and COUNTRYSIDE CASUALTY COMPANY, in solido, in the amount of Thirteen Thousand Seven Hundred Nineteen and 13/100 ($13,719.13) Dollars, and against defendant DONALD R. WOODS in the sum of Five Hundred and no/100 ($500.00) Dollars.
IT IS FURTHER ORDERED that the defendants DONALD R. WOODS and COUNTRYSIDE CASUALTY COMPANY, pay all costs in the district court.

*98 IT IS FURTHER ORDERED that all other demands by plaintiff, CHESTER RAY ELLIS, are hereby rejected.
As AMENDED the judgment is AFFIRMED and the costs on appeal are taxed equally against Chester Ray Ellis, Donald R. Woods and Countryside Casualty Company.
NOTES
[1] Plaintiff originally sued MFA Mutual Insurance Company of which Countryside is a subsidiary. Countryside answered stating it had written the policy which covered the Woods' truck that Jesselink was employed to drive.
[2] Jesselink could not use Woods' other truck because it was to be used for a trip to New Orleans.
[3] During the morning of June 28, while Woods was removing the radiator from his truck to take it to Monroe to have it repaired, Jesselink discussed with Woods the use of the Ellis truck to tow Woods' trailer. Upon obtaining Woods' consent to haul the cotton with the Ellis truck Jesselink went to Columbia, Louisiana and secured Ellis' consent to the use of his truck to haul Woods' load of cotton conditioned upon insurance being obtained on the truck. He returned to Winnsboro that afternoon and talked to Mrs. Woods about obtaining insurance on the Ellis truck and was told it would be covered. He obtained the number of the policy that he was told provided the coverage and returned to Columbia and gave this information to Ellis who then delivered possession of the truck to Jesselink.
[4] The insurer's adjuster wrote a letter to Ellis' attorney advising the Woods truck was ready for use at 10:00 a. m. on June 29 but with the exception of this information the exact time that the June 29th testing of the truck was completed is not clearly established in the record.
[5] Jesselink wanted the opportunity to test the vehicle under loaded conditions and Ellis hoped the test would result in the sale of the truck.
[6] The estimate is itemized as follows:

 Material: Labor: Total:
1 cab $10,500.00 $1,080.00 $11,580.00
1 Battery Box
 Cover 75.25 9.00 84.25
1 Left Fuel Tank 179.00 54.00 233.00
2 Fuel Tank Liners 18.30 - 18.30
1 Mirror Assembly 36.60 18.00 54.60
1 Left Front Tank
 Strap 28.20 9.00 37.20
1 Turn Lamp 11.25 5.40 16.65
1 Radio Antenna 5.45 18.00 23.45
Refinish Truck
 Complete 500.00 500.00
Wrecker Services
and Storage 911.05
Paint and Materials 150.00
Freight on parts 325.00
Tax 696.68
 __________
 GRAND TOTAL: $14,630.18

[7] The judgment is also in error in that it assesses storage and towing costs against Countryside when they are not covered under its policy, and it fails to give Countryside credit for its deductible of $250. These errors will be corrected in our amended judgment.
[8] Art. 2930The deposit is perfected only by the delivery, real or fictitious, of the thing deposited.

The fictitious delivery is sufficient, when the depositary is already possessed, in some other right, of the thing agreed to be left in deposit with him.
[9] Art. 2932The voluntary deposit takes place by mutual consent of the person making the deposit and the person receiving it.