110 So.2d 221 (1959)
Fadie JENKINS, Plaintiff-Appellee,
v.
AUDUBON INSURANCE COMPANY, Defendant-Appellant.
No. 4782.
Court of Appeal of Louisiana, First Circuit.
March 23, 1959.
*223 Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, Reid & Macy, Hammond, for appellant.
Dalton J. Barranger, Covington, for appellee.
Before ELLIS, LOTTINGER, TATE and FRUGÉ, JJ.
TATE, Judge.
Plaintiff was injured in an accident of April 12, 1956. To recover the damages thereby sustained, he brought this suit against the liability insurer of the driver of another vehicle allegedly responsible. Defendant appeals from adverse judgment. A suit by plaintiff's collision insurer under its subrogation claim against defendant's insured was consolidated for trial and for appeal, Motors Insurance Corp. v. Richardson, La.App., 110 So.2d 226, although a separate decree therein is rendered.
The accident occurred at approximately 8:00 a. m. at the intersection of the Bush road with Louisiana Highway 21 (the Covington-Bogalusa Highway). The entrance of traffic onto Louisiana Highway 21 from the Bush road is inhibited by stop signs. Immediately prior to the accident, a school bus driven by defendant's assured, Mrs. Ogise Richardson, had approached from the south along the Bush highway and had turned west (left) into and across Louisiana Highway 21. To avoid the school bus thus in its path, a westbound gravel truck on this highway driven by Pedro Polk had veered sharply to his left, or into the south lane of Highway 21 along which plaintiff Jenkins' eastbound pickup truck was at the time oncoming. As a result, the Polk and Jenkins vehicles collided, causing plaintiff's injuries.
The substantial question of this appeal is whether (as plaintiffs contend and as the trial court held) the school bus turned upon the main highway when the trucks driven by Jenkins and Polk were in such close proximity to the intersection that the latter drivers could not avoid the accident; or whether, on the other hand (as defendant contends), the school bus insured by defendant had pulled across the highway sufficiently in advance of the oncoming vehicles, so that some deficiency in lookout, speed, or control on the part of Jenkins and/or Polk, the drivers thereof, caused or contributed to the accident.
The trial court accepted the testimony of the eight witnesses testifying on behalf of the plaintiff, to the effect that the school bus at a speed of 8-10 mph had pulled into and across Highway 21 when the Polk truck at a speed of 40-50 mph was just 50-100 feet distant therefrom, so that the latter vehicle to avoid striking the children-filled school bus had veered sharply left into the oncoming (at a speed of 35-45 mph) plaintiff's path, and that the impact between Polk and the plaintiff had occurred while the school bus was still in the process of completing its left turn into the northern lane of Highway 21.
Under such circumstances, the trial court did not err in holding that the negligence of the school bus driver, in entering the main highway when the other vehicles were so close, was the sole proximate cause of the collision between the Polk and Jenkins trucks, the drivers of which being not reasonably able to avoid the accident after the sudden entry by the school bus across their immediate path and in derogation of their superior right of way. Steele for Use and Benefit of Steele v. State Farm Mut. Ins. Co., 235 La. 564, 105 So.2d 222; Guillory v. Frank, La.App. 1 Cir., 95 So.2d 197, certiorari denied; Fike v. McGraw, La.App. 1 Cir., 88 So.2d 713; Bahry v. Folse, La.App. 1 Cir., 83 So.2d 912, certiorari *224 denied; Robbins v. Mydland, La.App. 1 Cir., 81 So.2d 561.
Able counsel for defendant attacks the factual finding of the trial court, arguing that the testimony of plaintiff's witnesses was biased and improbable. It is urged that the contrary version of the accident to which an almost equal number of witnesses testified on behalf of defendant should have instead been accepted, namely, that the school bus had negotiated the crossing of the main highway, stopped on the north side thereof, and was in the process of loading children before the accident occurred, thus occasioned by the negligence of Polk (and/or Jenkins) in failing to observe and to respect the stopped school bus, see LSA-R.S. 32:233, subd. H.
It sufficies to remark, without detailed discussion, that we are unable to say from the record that plaintiff's witnesses showed bias or that their testimony is improbable or inconsistent with the physical circumstances surrounding the accident; and that the factual conclusions of the District Court herein as to the accident will be affirmed in accordance with the well settled principle that factual determinations of the trial court should not be disturbed upon review in the absence of manifest error. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707; Pierre v. Galloway, La.App. 1 Cir., 96 So.2d 916, certiorari denied.
The reason for the weight given on appeal to the evaluation of the credibility of witnesses by the trier of fact and for the reluctance of a reviewing court to disturb same was succinctly stated by the late beloved Justice Moise in Holmes v. Triggs, 214 La. 1083, 39 So.2d 739, shortly after he ascended the Supreme Court bench upon completion of several years' distinguished service as a trial judge, 39 So.2d 739-740:
"* * * The object of every judicial investigation is the ascertainment of the truth. The evidence offered is the means by which that is effected. It variously adjusts itself to perform its task in most certain and direct ways. Some things to a district judge are self-evident, others will be proved by his senses; but there are other subjects which address themselves to no palpable standard of truth but to human experiences. There are many things in the trial of a suit in a district court that are not susceptible of being taken down by the court stenographer but come under the observing eye of a district judge. The district judge has contact with the witnesses and observes their course of conduct, the manner of giving testimony, and he is in a better position to determine the credibility of the witnesses and to determine the proof of the facts from the evidence, than ourselves. We have not the direct contact with the witnesses in person. We have only a paper record and, therefore, the credibility of the witnesses and the weight to be given the evidence is not reflected to the same extent and the same certainty of proof as in a summary by the district judge. * * *"
While neither party contests the award to plaintiff for medical expenses ($353.20), the award (a) of $3,000 for pain and suffering and (b) of $1,300 for loss of earnings is attacked by defendant-appellant as excessive and by plaintiff-appellee (by answer to the appeal) as insufficient.
The personal injuries sustained by plaintiff Jenkins were a fairly severe cerebral concussion and also contusions over the head and body. He was unconscious and dazed for several hours after the accident. After three days in the hospital, he returned to his home but remained under medical care from the time of the accident (April 12, 1956) until his final discharge on September 21, 1956. During most of that interval, as a result of the concussion, Jenkins suffered headaches which his physician described as "almost unbearable" (Tr. 141), as well as from repeated spells of dizziness, weakness, and *225 extreme nervousness. Fortunately, after five months, plaintiff obtained relief from his symptoms, and no residual pain or disability is anticipated following his release from medical treatment on September 21, 1956. The award of $3,000 for plaintiff's pain and suffering at the time of the accident and thereafter is neither manifestly inadequate or excessive. See cases such as Green v. Southern Furniture Co., La.App. 1 Cir., 94 So.2d 525; Wilson v. Williams, La.App. 1 Cir., 82 So.2d 71; Stevenson v. Williams, La.App. 2 Cir., 76 So.2d 345.
Based upon the physician's testimony that plaintiff Jenkins was incapacitated from working during the five months he was under medical treatment, and upon Jenkins' own testimony that he had lost $20 per day in earnings from his gravel pit for each of 130 working days during his disability, or a total of $2,600, the trial court awarded plaintiff only half of this amount, or $1,300, because the plaintiff had made no effort to minimize his damages.
The only proof that plaintiff suffered any pecuniary loss of earnings is his own uncorroborated testimony that he lost "about $20.00 a day" because during his illness he was unable to assist his son in their partnership operation of a gravel pit, as a result of which the partnership's net earnings of about $40 per day were halved. According to plaintiff, normally he and his son by themselves pumped the gravel from their pit for loading onto trucks for delivery to job-sites, but following plaintiff's disability, since his son could not operate as well by himself, not as many truck-loads were sold. Plaintiff, however, testified that no one was hired to take his place and assist his son during his illness because "I didn't need anybody." (Tr. 62.)
Plaintiff was unable, upon cross-examination, to testify as to the number of truckloads per day delivered before and after his disability, nor to give any detailed figures upon which his claim to loss of profits was based. Nor did he produce any books or records showing the comparative income before and after his disability (although admitting he had some), nor produce the testimony of his partner or other corroborative evidence to prove that there was actually a pecuniary loss suffered by the partnership during the period of the plaintiff's illness.
Any loss of earnings or profits from plaintiff's business occasioned by his personal injuries resulting from the accident may of course be recovered from the tortfeasor or her insurer, if proved with sufficient certainty. But although we have recognized instances where a plaintiff's detailed and uncontradicted testimony as to such losses may constitute by itself proof thereof if so accepted by the trial court, this court has also repeatedly held that an uncorroborated general estimate by a plaintiff as to his loss of earnings or profits is not sufficient proof of such loss, where corroborative evidence is shown to be available and is not produced. Camus v. Bienvenue, La.App., 91 So.2d 99; Vest v. State, La.App., 90 So.2d 896; Rhymes v. Guidry, La.App., 84 So.2d 634; Jenkins v. A. R. Blossman, Inc., La.App., 60 So.2d 131: see also, Shreveport Laundries, Inc. v. Red Iron Drilling Co., La.App. 2 Cir., 192 So. 895; cf., Hayes v. Illinois Central Railroad, La.App. 1 Cir., 83 So.2d 160.
We must therefore hold that plaintiff's own estimate of his approximate loss of earnings, unsubstantiated by details and corroborative evidence available but unproduced at the trial, does not with the requisite sufficiency and certainty prove such loss. The award will therefore be amended so as to deny any recovery whatsoever for this item. (Although we have within our discretion remanded instead of dismissed a claim for loss of profits when we felt that the fact of the loss was definitely proved although the amount thereof was not sufficiently proved, see Camus v. Bienvenue above cited, we do not feel that such discretionary relief is justified by the present record since we are unable therefrom to hold that the plaintiff has borne his burden *226 of proving that he suffered any pecuniary loss of earnings whatsoever as a result of his injuries sustained in the present accident, see Rhymes v. Guidry, above cited.)
For the above and foregoing reasons, the award is reduced so as to exclude recovery for the loss of earnings in the amount of $1,300 granted below, and as thus amended, the judgment in favor of plaintiff is affirmed in all other respects.
Amended, and affirmed.