DIXON, Judge.
Appellant complains of the award of damages to the plaintiff. In the district court, there was judgment in favor of James A. Cobb and against the Allstate Insurance Company and its insured. The trial court awarded Mr. Cobb $2,824.78 for loss of earnings; $3,000.00 for a “whiplash $3,000.00 for a “lumbosacral sprain and $1,500.00 for a sprained elbow.
This award totals $7,500.00 for Mr. Cobb’s personal injuries,[1] and, according to the defendant, is so excessive as to constitute abuse of discretion by the trial court.
Plaintiff was a painting contractor at the time of his injury, May 11, 1968. He worked regularly after August 15, 1968.
Plaintiff testified that he customarily worked nine hours a day, six days a week during the summertime. He contracted for jobs, apparently painting the interior of newly constructed dwellings, at a specified rate per square foot of heated area, sometimes adding an amount for closets and other storage areas. It was plaintiff’s testimony that he, himself, painted on the jobs, and his accident required that he employ another painter to take his place, whom he paid the prevailing union scale. Plaintiff testified that his wife did his bookkeeping. He did not produce any books or records to substantiate his claim that he had employed another painter to take his place on any job. Two‘builders testified that plaintiff had contracted certain *154 work for them; they knew nothing about plaintiff’s earnings, but testified concerning the rate for which plaintiff agreed to perform the work.
Suit was filed on October 17, 1968. Subsequently, the defendant propounded interrogatories to the plaintiff, questioning him in detail about his earnings and loss of earnings. In the answers to interrogatories, plaintiff gave his gross earnings from January 1, 1968 to May 11, 1968, but in answer to a question concerning his expenses during the same period, plaintiff’s answer was “this information is unavailable at this time.” On the trial of the case, it was stipulated that Cobb’s gross income from January 1, 1968 to May 11, 1968 was $11,870.35, and his expenses for the same period were $11,016.01, a net of $854.34. Plaintiff’s 1966 federal income tax return reflected a net income from his business as a painting contractor of $2,-827.36. His income tax return for 1967 showed a profit of $5,050.58 from the paint contracting business. There was no evidence introduced in the record concerning Mr. Cobb’s income and expenses after May 11, 1968. The case was tried on January 21, 1969. Although plaintiff testified that his wife was his bookkeeper, he did not produce his wife, nor any books and records, to prove any part of his damages. Nor did he introduce any evidence to corroborate his testimony that he employed a painter at union wages to take his place while he was disabled. In fact, one of the building contractors called by Mr. Cobb testified that one of the jobs undertaken by Mr. Cobb at the time of his injury was never completed.
As the record stands, it is the plaintiff’s unsupported testimony that his loss of earnings equaled the amount he was required to pay a union painter to take his place for nine htmrs a day, six days a week, for the thirteen week period of disability. The amount awarded for loss of earnings for thirteen weeks ($2,824.78) almost equaled plaintiff’s net income for 1966 ($2,827.36), and was more than half his net income for 1967. The award exceeded the total amount plaintiff paid for labor in 1966 ($2,180.25) and was more than one-third the amount paid by plaintiff for labor for all his painters in 1967 ($7,118.25).
It was said in Jenkins v. Audubon Insurance Company, La.App., 110 So.2d 221, at page 225:
“Any loss on earnings or profits from plaintiff’s business occasioned by his personal injuries resulting from the accident may of course be recovered from the tortfeasor or her insurer, if proved with sufficient certainty. But although we have recognized instances where a plaintiff’s detailed and uncontradicted testimony as to such losses may constitute by itself proof thereof if so accepted by the trial court, this court has also repeatedly held that an uncorroborated general estimate by a plaintiff as to his loss of earnings or profits is not sufficient proof of such loss, where corroborative evidence is shown to be available and is not produced.”
With such a great disparity between the loss contended by Mr. Cobb and that which might have been expected from his past earnings, it was incumbent upon him to support his contention that he was required to employ a union painter to take his place (for nine hours a day, six days a week for thirteen weeks) with some evidence in addition to his uncorroborated statement.
The largest award that the evidence in this record will support for loss of earnings is plaintiff’s average weekly earnings for 1967 for the thirteen weeks of his disability, or $1,264.64. We are aware that this is out of proportion with the net profit of $854.34 which plaintiff made in the first four months of 1968, but it was proved that the summer months are the greatest income producing months for a person in plaintiff’s business.
Plaintiff was carried by ambulance from the scene of the accident to the hospital *155 where he was treated by his family physician. The doctor reported that Mr. Cobb’s complaint was of pain in his back, neck and right elbow, where the doctor found “muscle spasm.” X-rays revealed no fracture. Subsequent x-rays, taken about a month after the accident, also failed to reveal any fracture or dislocation. Plaintiff’s physician described plaintiff’s injuries as “myoligamentous strain, or so-called whiplash,” of moderate severity, a lumbosacral strain, “which means — is about the same thing as a sprain or strain of the muscles of the lower back. Myoligamentous strain of the lumbar region of the back,” and a sprained right elbow. The doctor testified that Mr. Cobb was “totally disabled for two months and partially disabled for approximately another month.” Mr. Cobb was in the hospital three days. He was not in traction. No brace of any sort was prescribed for him. He was given sedatives and muscle relaxants. He went to a physiotherapist on five occasions from May 23 to June 24, but discontinued the treatment because he thought it was not helping him. Mr. Cobb’s total drug bill was $15.00. Dr. Mason discharged him on August 15, and there was no subsequent examination by any physician. Although the plaintiff apparently has worked continuously since that time, he testified that his back and neck continued to hurt “a little bit all the time.”
The record is devoid of any particular information concerning the sprain of plaintiff’s elbow. He makes no further complaint, and did not testify that it interfered with his employment in any way.
In concluding that the plaintiff was entitled to $7,500.00 for the injuries detailed above, in addition to loss of earnings and other specific losses suffered, the trial court evaluated separately each injury complained of by the plaintiff, and awarded him damages equal to the total. Awards for damages for personal injuries are made to compensate victims, insofar as possible, for pain, suffering, inconvenience, and the like, suffered as a result of an accident. Each case will be different, and the damages awarded must depend upon the peculiar circumstances of each case. It is a difficult task to fix damages, and a trial judge’s conclusion ought not to be lightly disturbed.
Here, the court is required to fix an amount that will compensate the plaintiff for injuries of a moderate nature which prevented his employment for two months and partially disabled him for an additional month, which were treated conservatively and with a minimum of medication. The residual pain is minimal and is described by the plaintiff alone, with no corroboration. Under these circumstances, the award of $7,500.00 to Mr. Cobb for personal injuries is excessive, and will be reduced to $3,500.00. Consequently, that portion of the judgment rendered in favor of plaintiff, James A. Cobb, and against the defendants, Allstate Insurance Company and Lewis R. Elam, in solido, in the amount of $10,970.13 is amended and reduced to $5,-409.99 ($3,500.00 plus $1,264.64 for loss of earnings, plus $645.35 for special damages). In all other respects the judgment is affirmed.
The plaintiff is cast with the cost of this appeal; the defendants are to pay all other costs of this suit.

. The trial judge’s opinion was :
“In the Cobb suit, of course, there’s no question as to liability, only a question of quantum. There’s been $645.-35 of the special damages which was stipulated there’s no question there. Plaintiff, in our opinion, has proved his loss of earnings, which amount to twenty-eight hundred and twenty-four dollars and seventy-eight cents, which is, according to the testimony, fairly conservative. So we’ll allow those. The whiplash suffered by plaintiff, we think he is entitled to three thousand dollars for that. We also think he’s entitled to three thousand dollars for the lumbo sacral sprain, and for the sprain of the elbow, plaintiff has asked for fifteen hundred dollars which we think is very conservative, so we’ll allow that. Which makes the total judgment come to $10,970.13, plus costs, etc.”