307 So.2d 399 (1975)
Jacob A. AFEMAN
v.
INSURANCE COMPANY OF NORTH AMERICA et al.
No. 6600.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1975.
*401 Samuel W. Ethridge, Kenner, for Jacob A. Afeman, plaintiff-appellee.
Robert J. Young, Jr., Michael K. Fitzpatrick, New Orleans, for Insurance Co. of North America, L. D. Brinkman & Co. and Giffen Industries, Inc., defendants-appellants.
Before REDMANN, BOUTALL and BEER, JJ.
BOUTALL, Judge.
The plaintiff in this suit fell through a false ceiling above the offices of L. D. Brinkman and Giffen Industries, Inc., while there to inspect some merchandise. He sustained two broken wrists and instituted this suit to recover for those personal injuries.
Plaintiff is the 90% stockholder and president of Design Kitchens, Inc., a corporation involved in the design, manufacture and installation of custom kitchens. His main function in operating this business is to draw the designs, supervise installations and purchase the materials used to construct the equipment for the kitchens. Defendant had been a supplier of materials to plaintiff for several years.
On the day of the accident Mr. Afeman had returned to defendant's offices after having lunched with some of defendant's salesmen. He was preparing to leave when one of the salesmen induced him to go upstairs above the offices to look at some more merchandise. This storage area above the offices was merely plywood sheeting spread across the ceiling beams. It did not cover the entire ceiling area and was not separated from the false ceiling by any obstruction such as a guardrail.
Plaintiff and Thomas Gaule, the salesman, told the same story as to what happened when they went upstairs. It appears that Mr. Gaule led Mr. Afeman to the site of the merchandise, which was very near the edge of the plywood sheeting. Mr. Afeman immediately noted that the goods were not what he was looking for and as he turned to leave he stepped back off the plywood and onto the false ceiling. The false ceiling gave way and Mr. Afeman fell through into the offices below, injuring both his wrists.
There does not appear to us to be any question as to defendant's liability for plaintiff's injuries. Mr. Afeman was a business visitor and as such the owners of that building owed him a duty to discover reasonably foreseeable dangers and to keep the premises safe from any hidden defects or dangers. Mitchell v. Aetna Casualty and Surety Company, 284 So.2d 636 (La. App., 3rd Cir. 1973). The defendant's liability is based upon the following specific facts adduced by the trial judge from the evidence presented: It was dark in the storage area, the only light being sunlight from a colored plastic panel in the roof. The day was very dark and overcast and therefore not much sunlight entered the storage area. There was no artificial lighting in this area. The entire attic flooring was covered with dust and if a person didn't know where the plywood floor met the false ceiling he could not tell where the dividing line was. Mr. Afeman had never been in this area before. Mr. Gaule gave no warning of any kind to Mr. Afeman. There were no guardrails or warning signs in the storage area. Mr. Afeman was not the first person to fall through the false ceiling from the storage area. This court can scarcely imagine any more clear cut circumstances that would give rise to liability.
This case comes to us after an unusual course in the lower court. The case was fully tried and argued, after which the trial judge took the case under advisement. Seven months later the trial judge rendered a "Partial Judgment," which assessed liability to defendants but made no *402 award to the plaintiff. In this Partial Judgment was an order that Dr. Dunn, Mr. Afeman's physician return to testify so that ". . . . a fair and equitable determination can be made regarding the permanence of Mr. Afeman's injuries." Dr. Dunn did return to testify and stated that Mr. Afeman would have a permanent 5% disability of his right wrist and a 10% disability of his left wrist. Following this testimony the court awarded plaintiff $15,000 for injuries, pain, suffering and permanent disability; $1,500 for past and future medical expenses and $7,500 for loss of income.
Defendants contend that the trial court has erred by rendering the Partial Judgment and by reopening the case to permit the further testimony of Dr. Dunn. We find no error in the actions of the trial court.
Defendant argues that the Partial Judgment was rendered in violation of CCP Article 1915[1]. We do not feel that CCP Article 1915 has been violated. It states, "A final judgment may be rendered. . ." and the jurisprudence of this state has long held that judgments disposing only of liability and not quantum are not final judgments and are not appealable. Loew's, Inc. v. Don George, 227 La. 127, 78 So.2d 534 (1955); Jeansonne v. Willie, 188 So.2d 170 (La.App., 4th Cir. 1966). We hasten to point out that defendant makes this argument on purely technical grounds and claims no prejudice from the Partial Judgment and indeed did not attempt to appeal from the Partial Judgment.
Defendant maintains that the trial court erred by reopening the case to allow the further testimony of Dr. Dunn. He claims this not only violates CCP Article 1632 but that he was prejudiced by this testimony. We find no error in this action of the trial court and no prejudice to defendant.
Comment (b) of CCP Article 1632 states in the second paragraph:
"It has been held that it is within the sound discretion of the court to allow testimony after both parties have closed their cases. See Succession of Robinson, 186 La. 389, 172 So. 429 (1937),. . ."
The trial judge's reasons for requiring the further testimony of Dr. Dunn were to discover the precise percent disability of Mr. Afeman's injuries, which Dr. Dunn was unable to state with any certainty at the trial. It appears to us that the trial judge's motives were to render justice based upon all the facts and we certainly cannot say this was an abuse of discretion.
Defendant claims that this further testimony of Dr. Dunn prejudiced his cause. From our review of the record we cannot see any prejudice, in fact, we feel that the further testimony probably aided defendant more than plaintiff. At the trial Dr. Dunn testified that there was definite limitation of motion in Mr. Afeman's wrists and that he anticipated permanent disability. He was, however, unable to state exactly what that disability would be. In our opinion this testimony alone would *403 have allowed the trial judge to render a judgment for permanent disability. At the time of the further testimony Mr. Afeman's wrists had improved over what they were at the trial and at this point Dr. Dunn assigned the residual percentages of 5 and 10%. We fail to see how further testimony which showed medical improvement of Mr. Afeman's wrists can prejudice defendant.
Mr. Afeman had both his arms in a cast for 3 months and was unable to do most of the things he normally could do since the casts encompassed most of his fingers and restricted their motion. We feel the award of $1,500 for past and future medical expenses and the award of $15,000 for pain, suffering and permanent disability are within the discretion of the trial court. RCC Article 1934(3).
The last award which defendant complains about is the $7,500 award for loss of income. At the trial plaintiff had the accountant for Design Kitchens, Inc. testify as to losses sustained by the corporation subsequent to Mr. Afeman's injuries. Plaintiff maintains that since he is the president and 90% stockholder in Design Kitchens, Inc. that any loss suffered by the corporation is also suffered by himself. RCC Articles 435 and 436 distinguish between corporations as entities and the persons who comprise the corporation. Plaintiff wishes this court to disregard the corporation's existence and view this loss of income as his; we cannot do this. If a corporation has sustained a loss then only that corporation can sue to recover it. Texas Industries, Inc. v. Dupuy and Dupuy Development Inc., 227 So.2d 265 (La.App. 2nd Cir. 1969). Furthermore, the evidence does not causally connect the corporate losses (which occurred before the injury also) to plaintiff's injuries in any event. There is no evidence in the record which would show a loss of income attributable to plaintiff's injury and therefore we reverse this award.
The plaintiff has answered this appeal and asked for awards for mental anguish and suffering plus future pain and suffering. We feel that the record does not reflect a situation in which an award for mental anguish could be granted and the trial judge properly denied such recovery. Plaintiff bases his claim for future pain and suffering on the statement of Dr. Dunn that it is possible that Mr. Afeman may develop arthritis in later years. Awards should not be given based upon speculation that a 51 year old man may develop arthritis in later years. The trial judge properly denied this award.
Lastly, plaintiff seeks an increase in the amount of expert fees from $150 to $765. It does not require citation to say that the matter of expert fees is within the discretion of the trial judge and we will not disturb that award, though we expressly approve refusal to cast defendant for the expert but immaterial accounting testimony and for unnecessary testimony by a meteorologist reading weather bureau records.
It is ordered, adjudged and decreed that the judgment of the lower court is hereby amended by deleting the $7,500 award for loss of income. In all other respects the judgment is affirmed, defendant-appellants to pay all costs.
Amended and affirmed.
NOTES
[1] "ART. 1915. Partial judgment

"A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
"(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or interveners;
"(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969;
"(3) Grants a motion for summary judgment, as provided by Articles 966 through 969; or
"(4) Renders judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
"If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case."