CIACCIO, Judge.
Plaintiff, F. A. Nobile, brought an action for damages for injuries sustained in an automobile accident which occurred on May 21, 1975, near the intersection of Magazine and Foucher Streets in the City of New Orleans. The case was referred to the Commissioner for trial and after an extensive trial on the merits, the Commissioner awarded judgment in favor of the plaintiff, F. A. Nobile, and against the defendant, New Orleans Public Service, Inc., in the sum of $89,387.02.[1] This judgment was amended by the district court judge and the award to the plaintiff was increased to the amount of $142,281.09.[2] The plaintiff appealed the judgment. We find no error in the district court’s judgment and affirm.
The issues to be considered on appeal are: (1) Did the district court err in its refusal to award damages for loss of past income? (2) Did the district court err in its refusal to award damages for loss of future income, which income is comprised of loss of salary and loss of profits and benefits?
The facts are uncontested: On May 21, 1975, at 8:30 A.M. the plaintiff was operating his vehicle in a westerly direction on *37 Magazine Street. When he approached the intersection of Magazine and Foucher Streets, he was forced to stop because of congested traffic. The plaintiff’s vehicle stopped some three feet from a van truck and was in this position one to two minutes when the plaintiff’s vehicle was struck by the defendant’s bus which was being driven by a New Orleans Public Service employee. The impact pushed the plaintiff’s car into the rear of a van truck that had stopped ahead of it.
The plaintiff sustained a sprain of his right thumb, soreness of the left shoulder, neck and low back pain. He was initially treated at the Emergency Room of Mercy Hospital. He was admitted to the hospital and remained there for treatment for five days. The plaintiff’s provisional diagnosis was acute cervical and lumbar strain, degenerative arthritic condition of the lumbar spine, and an acute strain of the right thumb. While in the hospital, the plaintiff was treated with physical therapy, muscle-relaxant medication and pain killing medications. After release from the hospital, the plaintiff recuperated at home for a period in excess of two weeks. He continued to suffer low back pain. The pain in the neck and thumb had subsided. On June 9, 1975, approximately three (3) weeks after the accident, plaintiff returned to his contracting business on a limited basis.
Throughout the next year he complained of continuous pain in his lower back and was treated on a regular basis by Dr. Wil-not Ploger, an orthopedic surgeon. He was treated with muscle relaxants and pain killers, and a cloth corset was prescribed for support of his lower back. On June 14, 1976 the plaintiff was again admitted to Mercy Hospital where he remained until June 21,1976. He was diagnosed as having acute lumbar disc syndrome and was treated with traction, physical therapy and pain killing medication. Upon his release from the hospital, the plaintiff continued periodic office visits to Dr. Ploger. A metal corset and other patient support aids were prescribed on May 12, 1977. It was Dr. Plo-ger’s opinion that the trauma of the accident of May 21, 1975, aggravated the arthritic condition of the plaintiff’s back and initiated the back complaints.
On January 24,1979 the plaintiff consulted another orthopedic surgeon, Dr. Bernard Manale. He diagnosed the plaintiff as suffering from degenerative spondylosis, apon-dylolesthesis, narrowing of the disc spaces, osteophyte formation with the possibility of spinal stenosis. Dr. Manale found that as a result of the condition, the plaintiff had a thirty percent (30%) impairment of the body as a whole. Dr. Manale and Dr. Ploger felt the plaintiff’s condition suggested the possibility of a ruptured disc. Dr. Manale, unlike Dr. Ploger, was of the opinion that the plaintiff should undergo surgery for correction of his back problem.
On March 16, 1979, the plaintiff was examined by Dr. George Berkett, an orthopedic surgeon. Dr. Berkett was of the opinion that at the time of the examination, the plaintiff had recovered from the effects of the accident.
The plaintiff, who formerly had a very active lifestyle, both socially[3] and in business, was severely restricted in his activities after the accident.
Plaintiff, an architect, owned and operated a business known as F. A. Nobile, Inc., a successful engineering and contracting corporation. He was involved with designing, engineering, cost estimating, purchasing of materials and supervising every job his company performed. The plaintiff contends that since the accident he has sustained a great reduction in the volume of his business, a proportionate reduction in salary and in the retained earnings of the company.
The district court stated in its reasons for judgment:
“In addition, the Court is of the opinion, that the award of $80,000.00 for pain and suffering, past and future, as well as for permanent disability should be increased *38 to the sum of $105,000.00. The Court is further of the opinion that plaintiff has not satisfactorily proven his future loss of earnings. The Court is of the opinion, however, that he has established losses in the amount of $27,894.07, and the Court will amend the Commissioner’s report accordingly.”
The plaintiff argues that the award of $27,894.07 only compensates for the loss of corporate profits and benefits and does not take into account plaintiff’s loss of salary in the amount of $63,331.74. He further argues that loss of future income was proven and that he proved such losses in the amount of $132,226.15.
Before a trial court award can be disturbed as inadequate, the reviewing court must consider the award in light of the facts and particular circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La.1979). The reviewing court will not disturb the award unless, based upon the particular facts involved, the trier of facts abused his great discretion. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, supra. Likewise, the reviewing court must give great weight to the conclusions of the trier of facts and should not disturb the trier of facts reasonable evaluation of credibility and the reasonable influences he draws from the facts. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977).
One element of the damages from a permanent partial disability, which results from an accident, is any loss of earnings attributable to that disability. Gobin v. Kogel, 375 So.2d 755 (La.App. 4th Cir., 1979) writ ref. 388 So.2d 486. Plaintiff must prove the past and future loss of income by a preponderance of the evidence. Hardie v. Pylant, 375 So.2d 189 (La.App. 2nd Cir., 1979) citing Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971).
Moreover, the law is well settled that loss of future profits are recoverable when it is proven that such loss has actually been sustained, even though the amount of the loss cannot be established with mathematical certainty. Schwartz v. United States Fire Insurance Co., 375 So.2d 718 (La.App. 4th Cir., 1979). Such damages must be proven with reasonable certainty in order to be recovered. Landvoight v. La. State Employees Retirement System, 337 So.2d 881 (La.App. 1st Cir. 1976).
The expert utilized by the plaintiff to evaluate his business losses was Dr. Seymour S. Goodman, a professor at the Graduate School of Business at Tulane University. He was qualified by the court as an expert in economics. He testified at length in an attempt to demonstrate to the court the extent of the plaintiff’s economic losses resulting from the accident.
The Commissioner analyzed the testimony of the economist and found: “Mr. Nobile did not prove to my satisfaction that the Corporation suffered any loss.” (Commissioner’s Report-Tr 15). The Commissioner reasoned that:
“Considering the above testimony of Mr. Nobile, it is evident that Dr. Goodman’s assessment of the income loss of the Corporation is based on gross sales volume which has fluctuated because of a voluntary decision of Mr. Nobile, and not from the involuntary effect of Mr. Nobile’s injury.” (Commissioner’s Report-Tr 17)
The Commissioner concluded: “..., the gross sales were voluntarily reduced by Mr. Nobile, and, hence, his personal income would be subject to the voluntary reduction of gross sales. (Commissioner’s Report — Tr 18).
In reviewing the case and the exceptions to the decision of the Commissioner, the trial court amended the judgment of the Commissioner by awarding an additional $25,000.00 for pain and suffering and permanent disability.[4] He also awarded the *39 plaintiff business losses in the amount of $27,894.07.[5]
The plaintiff argues that since the trial court awarded $27,894.07 in business losses, that the court accepted Dr. Goodman’s formula. Accordingly, plaintiff reasons that Dr. Goodman’s formula should be used in awarding Mr. Nobile past and future income losses and future losses of corporate benefits and assets.
Although the district judge amended the Commissioner’s report to award plaintiff the sum of $27,894.07 for the loss of corporate profits and benefits, translated into a reduction in the net worth and, therefore, in the value of plaintiff’s stock,[6] the record does not support this award.
Plaintiff introduced over 100 exhibits including corporate income tax returns from its inception in 1958, annual balance sheets and various schedules and charts analyzing sale and income. These records support the Commissioner’s refusal to award any sum for this item of damages.
The accident occurred on May 21, 1975 and could have little effect on the corporate activities for the fiscal year ending July 31, 1975. At this time the earned surplus/net worth of the corporation was $55,433.18. At the time of trial in June, 1979, the value of the corporation had increased to $64,-296.87, using the fiscal year ending July 31, 1978. (Emphasis Supplied). The corporation also continued to pay substantial amounts into plaintiff’s pension fund and life insurance policies as it had done prior to the accident. There were reductions in gross sales in the year immediately following the accident but gross sales in fiscal 1978 exceeded those in fiscal 1975. The corporation had net losses of $30,470.54 in fiscal 1974, the year before the accident and had a net loss of $16,758.41 for fiscal 1975, the year of the accident. The net worth of the corporation reached its peak at fiscal 1973 when it was $86,422.21, but the records show a steady decline to $65,546.10 at July 31, 1974, $55,433.18 at July 31, 1975 and $39,432.09 at July 31, 1976. The net worth then increased to $56,368.54 on July 31,1977 and to $64,296.87 on July 31, 1978. These figures justify the action of the Commissioner in refusing to make an award for reduction in the value of the corporation or for loss of corporate profits and benefits.
Although the district judge may have been influenced by the reduction in gross sales that occurred in the year immediately following the accident and concluded that plaintiff had suffered a compensable economic loss, this award cannot serve as a basis for-any additional awards.
The district judge refused to make an award for future loss of corporate profits and benefits or for reduction in the value of the corporate stock and we cannot say that his decision was manifestly erroneous.
In seeking an award for loss of income plaintiff reasons that since the trial court granted an award for permanent disability, it must follow that plaintiff should have been awarded damages for loss of earnings. Plaintiff contends that the disability caused a dimunition in his activities and hence produced an actual loss of earnings. The record does not support the plaintiff’s position.
There is no automatic award for loss of income due to partial disability. The disability must result in a loss of income for it to be compensable. In this case, the plaintiff is a professional, whose earnings depend upon his training and professional skills, which are more mental than physical. Therefore, a curtailment of his physical activities does not necessarily translate into a dimunition in his earning capacity.
The Commissioner found that the plaintiff voluntarily regulated his income by his own actions. There is no error in this find *40 ing as it is clearly supported by the record. In the fiscal year ending July 31, 1972, the corporation had gross sales of $315,916.86 and taxable income of $36,325.33, with Mr. Nobile drawing an income of $44,948.00. During the fiscal year ending July 31, 1973 the corporation had gross sales of $611,-804.18, taxable income of $7,547.88 and Mr. Nobile drew an income of $46,863.80. However, for the fiscal year ending July 31, 1974, the year preceeding the accident, the corporation showed gross sales of only $68,-468.22 with a net operating loss of $30,-470.54 and Mr. Nobile drew only $18,000.00. (Emphasis Supplied). At the end of fiscal year 1978, some three years after the accident, the gross sales of the corporation had increased to $193,782.35 with taxable income of $6,962.62 and Mr. Nobile drew income of $19,700.00. We cannot conclude that the Commissioner’s finding of a voluntary variation in personal income is clearly wrong, as this finding is supported by the record.
The annual salary or draw of the plaintiff cannot be precisely ascertained from the corporate tax returns which were introduced into evidence as plaintiff operated on a calendar year and the corporation was on a fiscal year basis. Exhibits were prepared to reconstruct Mr. Nobile’s annual earnings from the corporate tax returns and records, but these figures cannot be verified from the corporate exhibits filed into evidence. The best evidence of the plaintiff’s personal income would have been his personal income tax returns. Although this item of proof is not absolutely required, it is obviously probative and helpful. Where numerous corporate records were introduced into evidence, the absence of the plaintiff’s personal tax returns is a factor which may have been considered by the Commissioner in arriving at his conclusion that the plaintiff did not prove his loss of earnings.
Under the circumstances, the Commissioner was not clearly wrong in finding that the plaintiff had failed to sustain his burden of proof required to substantiate awards for reduction in the value of the corporation and loss of past or future income. Nor was the district judge clearly wrong in concurring in the Commissioner’s refusal to award damages for past or future earnings and future loss of value of the corporation. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Canter v. Koehring, 283 So.2d 713 (La.1973).
For the reasons assigned, the judgment of the trial court is affirmed. Costs are assessed against the appellant.
AFFIRMED.

. The Commissioner’s award of $89,387.02 consists of $80,000.00 for physical pain and suffering (past and future), and mental anguish and anxiety (past and future); $3,350.00 for future medical; $3,931.33 for past medical expenses and $1,105.69 for property damage.

. The district court judge’s award of $143,-281.09 consists of $105,000 for past and future pain and suffering and permanent disability; losses of $27,894.07, and affirmation of the award of $9,387.02 for special damages.

. His activities included golfing, sailing, country drives, dancing, attending parties and football games, and an active sexual relationship with his wife.

. The award for pain and suffering and permanent disability is not raised as an issue on appeal.

. In the absence of an answer to the appeal, the sole issue presented on appeal with regard to the award for business losses is whether this amount should be increased. No argument has been presented that the award was improper or that it should be reduced.

. The corporation is not a party to this suit— plaintiff claims a reduction in the value of the corporate stock owned by him.