Timothy W. METZ, Plaintiff-Appellee Cross-Appellant,

v.

UNITED TECHNOLOGIES CORP., General Electric Credit Corporation of Georgia and New York Airways, Inc., Defendants-Appellants Cross-Appellees.

Nos. 153 to 155, Dockets 84–7204, 84–7206, 84–7282.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1984.

Decided Jan. 24, 1985.

Charles F. Krause, New York City (Speiser & Krause, P.C., New York City, of counsel), for plaintiff-appellee cross-appellant.

Harold V. McCoy, Mineola, N.Y. (Jerome C. Murphy, McCoy & Agoglia, P.C., Mineola, N.Y., of counsel), for defendant-appellant cross-appellee, United Technologies Corporation.

Leonard Weinstock, New York City (Ronald A. Bartolucci, Garbarini, Scher & De-Cicco, P.C., New York City, of counsel), for defendants-appellants cross-appellees, General Electric Credit Corporation of Georgia and New York Airways, Inc.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges, and MacMAHON, District Judge.[*]

CARDAMONE, Circuit Judge:

Defendants appeal on the grounds that the district court in this negligence case failed to charge the jury that plaintiff's damages for future lost wages, pain and suffering and medical expenses should be reduced to present value. Although a charge to a jury on future damages should not contain a cap, neither should it allow the jury to make an award like the golden fleece. In charging a jury on future damages, there is a principled middle ground between placing a ceiling on the award, and making the sky the limit, that is to discount all awards for future lost dollars to their present value. Because the failure to so charge is plain error, we reverse and remand the case for a new trial.

## I

Timothy Metz, a citizen of Louisiana, brought this diversity action in the United States District Court for the Eastern District of New York (Wexler, J.) to recover damages for personal injuries he suffered while a passenger on a commercial helicopter when it crashed in 1979 at Newark International Airport. Defendants are United Technologies Corporation, the manufacturer of the helicopter, General Electric Credit Corporation of Georgia, the owner, and New York Airways, the operator. Defendants conceded liability. At the trial on damages a jury found for plaintiff in the sum of $2,089,000, to which the court added prejudgment interest of $870,799. This appeal is from the $2,959,799 judgment entered on that verdict. The defendants' principal arguments on appeal are that the trial judge's failure to charge present value to the jury was prejudicial error, that references to the profitability of a corporation of which he was a majority stockholder led the jury to apply an incorrect measure of damages, and that the award was excessive as a matter of law. Plaintiff cross-appeals arguing that, in the event a new trial is ordered, the jury should be permitted to consider corporate profitability.

The accident occurred in April 1979. The 36-year-old plaintiff was president of D & J Manufacturing Company ("D & J") a Louisiana corporation engaged in the business of manufacturing and selling foam-insulated metal wall panels. Plaintiff and a business associate, Frank Hesser, formed D & J in 1976 and had begun making and marketing their product in 1977. Plaintiff owned 60% of D & J through Datco, a corporation of which he was the sole stockholder. His chief duties were to bid on contracts and to sell the wall panels, for which he received a salary representing the fair value of his services. Hesser owned 40% of D & J and was in charge of production. Metz sustained serious injuries including a compound, comminuted fracture of both legs and a severe compression fracture of the fourth lumbra vertebra. His doctor testified that permanent disability would be about 70%. Although plaintiff's physical condition has improved, he still has not been able to resume regular employment. D & J and Datco have ceased operations.

[*] Honorable Lloyd F. MacMahon, District Judge, United States District Court for the Southern District of New York, sitting by designation.

Although plaintiff's recovery was substantially for future damages, the district court excluded expert testimony on interest and inflation rates and present value calculations, and gave no jury instruction on present value. Before trial plaintiff deposed an economist who testified as to present value and estimated plaintiff's loss. At the outset of the trial and through its duration, defendants objected to the economist testifying because of their disagreement with the data upon which he based his opinion. Defendants made no objection to his testimony on present value. The trial judge granted defendants' motion on the ground that the testimony plaintiff proposed to introduce was based on data unsupported by the evidence, hence confusing and prejudicial. As a result, plaintiff never presented his testimony on present value.

Defendants' efforts to introduce evidence on present value were similarly unsuccessful. They called an economist who answered a few questions on interest rates, but was not permitted to testify on present value. The trial court excluded this testimony on the ground that it was not in the pretrial order. In his summation, defense counsel briefly mentioned present value. Counsel took exception to the court's failure to charge on this issue. Since the trial court's refusal to admit evidence and instruct the jury on present value requires a remand and a new trial, it is unnecessary to address defendants' other arguments for reversal.

Originally, the case came before Judge Bramwell. In the middle of 1983 it was reassigned to Judge Wexler. Prior to the reassignment discovery had been completed, a number of motions had been made and a pretrial order had been written and revised. Judge Bramwell had ruled that the case should be tried pursuant to the Louisiana law of damages. He had also made a pretrial ruling that future lost profits of D & J were highly speculative and not a proper element of plaintiff's damages. This ruling, which is the subject of plaintiff's cross-appeal, is affirmed.

## II

Present value calculations are a basic and necessary element of all awards for future earning capacity. Nearly 70 years ago the Supreme Court stated the importance of discounting in order to achieve an economically sound result. *Chesapeake & Ohio Railway Company v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916). In *Kelly*, a railroad liability case, the Court vacated the judgment appealed from because the trial court refused to charge present value, *id.* at 488, 36 S.Ct. at 631, stating:

We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.

*Id.* at 491, 36 S.Ct. at 632. Louisiana law also requires that awards for future loss of earnings be discounted. *See Philippe v. Browning Arms Co.*, 395 So.2d 310, 315–16 (La.1980); *Johnson v. Dufrene*, 433 So.2d 1109, 1114 (La.App.1983); *Holmes v. Texaco, Inc.*, 422 So.2d 1302, 1304–05 (La.App. 1982).

The law on discounting of awards for future pain and suffering is less clear. The parties have not cited and our research has failed to uncover any Louisiana law governing or even addressing this precise issue. Under these circumstances, our task is "to reach the correct result by looking to the decisions of other jurisdictions." *Chiarello v. Domenico Bus Service*, 542 F.2d 883, 887 n. 5 (2d Cir.1976); *See generally* C. Wright, Law of Federal Courts 370–77 (4th ed. 1983). Some courts have held that awards for future pain and suffering are not to be discounted and that it

is error to instruct the jury to reduce such an award to its present worth. *See, e.g., Taylor v. Denver and Rio Grande W.R.R. Co.,* 438 F.2d 351, 352–53 (10th Cir.1971); Annot., 60 A.L.R.2d 1347, 1352–53 (1958). These courts reason that since pain and suffering cannot be measured with any mathematical precision, reduction to present worth would be arbitrary as well as artificial. *See* 22 Am.Jur.2d *Damages* § 108 (1965).

■ For several reasons we agree with the courts that subscribe to the view that it is proper to discount awards for future pain and suffering to present value. *See, e.g., Abbott v. Northwestern Bell Telephone Co.,* 197 Neb. 11, 16, 246 N.W.2d 647, 650 (1976) (Nebraska's highest court affirmed a trial court's instruction that the jury calculate the present cash value of future general damages, rejecting older Nebraska case law to the contrary). First, the history of damages for pain and suffering supports their limitation. Damages for pain and suffering, which originated with Roman Law, were first awarded as retribution for the insult plaintiff incurred. *See* B. Nicholas, *An Introduction to Roman Law* 215–16 (1982); *cf.* T. Plucknett, *A Concise History of the Common Law* 330–31 (2d ed. 1936). Understandably, the law viewed an injured plaintiff as the only person interested in the award and in assuring that the award is as high as possible. Today, the law is concerned not only with the pain and suffering of the injured individual, but also with the loss society shoulders, which includes the increased costs of insurance and the lost productivity of the individual. Thus, after adequate provision has been made for an injured plaintiff, the goal is to achieve a fair and reasonable allocation of loss. Discounting awards of future damages to their present value results in a more reasonable allocation of loss. *See* O'Connell and Carpenter, *Payment for Pain and Suffering Through History,* 1983 Ins.Couns.J. 411–17.

Strong policies expressed in decisional laws also support the preference for discounting the amounts recoverable for future benefits. The earning power of the present use of money is the same, regardless of the particular future benefit claimed to be lost. That advantage should be fully accounted for in arriving at a verdict for such damages. *See Chesapeake & Ohio Railway Co. v. Kelly,* 241 U.S. at 491, 36 S.Ct. at 632. We echoed those views in *Chiarello* when we said:

> Awards for future pain and suffering ..., like awards for future loss of earnings, result in a lump-sum award for damages that accrue in the future. Irrespective of the type of injury involved, the advantage of the present use of money is the same and should be taken into account in arriving at the proper amount of damages.

*Id.* 542 F.2d at 887.

Finally, practical reasons also compel our conclusion. All future damage awards are somewhat artificial. Simply awarding a lump-sum for future benefits is highly uncertain and speculative. At the very least, discounting such benefits to present value introduces a principled consistency that takes into account the time value of money. Jurors deliberating on damages for future losses obviously consider—as the word "future" itself implies—a time factor. One reason is that trial judges generally inform the jury of the plaintiff's life expectancy when charging it on future damages, thereby directly focusing attention on the fact that the damages for this kind of loss cover a period of time. Jurors are well able to distinguish between an award that involves a time factor and a present lump sum award such as one for punitive damages. Thus, discounting awards for future pain and suffering to their present value is the rule that we prefer.

Where state law clearly mandates the trial court to discount awards for future earnings, but has no law governing the discounting of future pain and suffering, it is reasonable to infer that the state court, if faced with the issue, would discount future pain and suffering as well. *See Chiarello,* 542 F.2d at 886–87 (in a diversity suit where no state law existed as to

discounting of awards for future pain and suffering, it was not error for the trial judge to instruct the jury to discount). *See also Gretchen v. United States,* 618 F.2d 177, 181 (2d Cir.1980).[1]

■ Under Louisiana law an appeals court will not disturb the assessment of general damages made by the trial court unless the record clearly demonstrates an abuse of the great discretion invested in the finder of fact. La.Civ.Code Ann. art. 1934(3). *See Coco v. Winston Industries,* 341 So.2d 332, 334–35 (La.1976). In the present case, failure to include any present value adjustment renders the calculations mathematically inaccurate and constitutes substantial and prejudicial error to the defendant.[2] *See Ball v. Delta Marine Drilling Co.,* 476 F.2d 287 (5th Cir.1973) (failure to instruct jury on present value held to be reversible error).

Plaintiff's reliance on cases in which a so-called "off-set" or "judgmental" approach was used, *see Merrell v. State,* 415 So.2d 660, 667 (La.App.1982); *Bialy v. State,* 414 So.2d 1273 (La.App.1982); *Hardy v. State,* 412 So.2d 208, 212 (La.App. 1982); *see also O'Rourke v. Eastern Airlines,* 730 F.2d 842, 857 (2d Cir.1984), is misplaced. In each of these cases the court expressly held on the evidence presented that the rate of inflation and the nominal rate of interest were almost equal and offset each other. Hence, it was unnecessary to discount future damages. Here the parties presented no evidence on inflation and discount rates. The district court therefore could not have applied an offset method. Further, plaintiff's evidence was tied to a period from the middle

1970s to the early 1980s, a period of unusually high inflation. Today, with moderating inflation experts would paint a significantly different economic picture.

For these reasons we conclude that the exclusion of evidence on present value and the failure to instruct the jury about the present value of lost future earning capacity and future pain and suffering was reversible error.[3]

### III

Plaintiff on his cross-appeal urges us, in the event of a remand, to direct the trial court to admit evidence of the profitability of plaintiff's corporation, Datco. He contends that the proper measure of damages is the lost profits sustained by Datco after D & J ceased operation. Judge Bramwell ruled on this issue at the pretrial phase of the case and concluded that because D & J is an entity separate from its individual owner, lost corporate profits are not a proper element of the individual owner's personal injury damages. Judge Bramwell added that "even if [the Court] were to look to D & J earnings history and projections plaintiff would run into the formidable barrier of D & J not having declared any dividend in its rather abbreviated earnings history.... [T]he earnings outlook of D & J at the time of this accident was, in the Court's opinion, highly speculative at best." Although we agree with the decision to exclude evidence of D & J's profitability, we cannot concur in the district court's exposition of the Louisiana law of damages. Therefore, we set forth the Louisiana law on this issue for the trial court to consider on remand.

---

1. *But see Halvorsen v. Dunlap,* 495 F.2d 817, 822 (8th Cir.1974) (the Eighth Circuit held that the trial court's failure to instruct the jury to discount was not an abuse of discretion when it found no South Dakota law on the issue of discounting damages in a diversity wrongful death case); *Humble v. Mountain State Construction Co.,* 441 F.2d 816, 820 (6th Cir.1971) (same result, applying Kentucky law).

2. For example, if plaintiff's $2,959,799 judgment were to represent a 25-year annuity, and be discounted at a relatively low rate of interest,

say 2%, the award would be reduced by over 20%. Discounted at a relatively high rate of 6%, the award would be cut in half.

3. On retrial, the trial court need not use any particular formula or method of discounting. After considering the relevant economic evidence it may choose to offset inflation and interest, or it may choose to have the jury find and apply an appropriate rate. All that is essential is to reach a result that properly takes into account the time value of money.

### A. *Louisiana Law*

■ In personal injury cases the measure of damages is determined by the injured party's loss of ability or capacity to earn. *See Folse v. Fakouri*, 371 So.2d 1120, 1124 (La.1979); *Southern Television Electronics v. Read*, 244 So.2d 624 (La. App.1971). Profits of plaintiff's business are admissible in evidence for the purpose of establishing the pecuniary value of that diminution of earning capacity, so long as such profits are not uncertain and speculative and their loss is a direct result of plaintiff's injury. *See Nobile v. New Orleans Public Service, Inc.*, 419 So.2d 35, 38 (La.App.1982); *Schwartz v. United States Fire Insurance Co.*, 375 So.2d 718, 720 (La.App.1979); *Mire v. Timmons*, 155 So.2d 265, 267 (La.App.1963). *See also Dingus v. Cain*, 56 Tenn.App. 294, 406 S.W.2d 169, 171 (1966). An award should compensate plaintiff for the reduction in the net worth of the corporation, reflected by the loss in value of plaintiff's stock. *Nobile*, 419 So.2d at 39.

■ First, plaintiff must show that his claimed loss of corporate profits was the proximate result of his injury. Where plaintiff's business profits depend for the most part on the employment of capital or the labor of others, lost profits are not a proper measure of plaintiff's loss. The business profits must be a product of the personal effort, skill or ability of the plaintiff. Thus, in *Nobile*, 419 So.2d at 39–40, where plaintiff, an architect, owned and operated his own engineering and contracting corporation, the Court of Appeals affirmed the trial court's refusal to make an award for loss of future profits. The *Nobile* court found no evidence to tie the corporation's losses to plaintiff's injury. Rather, it concluded plaintiff decreased the volume of his company's business before and after the accident. Three years after the accident, plaintiff's corporation began to grow again. As a consequence, plaintiff failed to show that any losses resulted from the accident. But in *Mire v. Timmons*, 155 So.2d at 267, plaintiff, owner and operator of a truck, received an award for lost profits from his trucking operation occasioned by personal injuries resulting from an accident. The court held that the "elements of his earning power," the truck and his manpower, were "inextricably interwoven." *See also Bischoff v. Dodson*, 405 S.W.2d 514, 519 (Mo.App.1966) (requiring plaintiff to make a "substantial showing that the capital invested in his business was relatively insignificant, and that the success of his business was predominantly dependent upon his personal effort and initiative").

■ Second, plaintiff must prove such damages with reasonable certainty in order to recover. The amount of loss attributable to the reduction in corporate earnings need not be established with mathematical certainty, but plaintiff must produce sufficient evidence for determining that loss. *See Schwartz v. United States Fire Insurance Co.*, 375 So.2d at 720. In *Schwartz*, the plaintiff sought to recover loss of future business profits for one store operating at the time of the accident and for a second store scheduled to open after the accident. The Court of Appeals held that the trial court erred by excluding plaintiff's evidence of corporate profits. The case was remanded to give plaintiff a chance to prove that the injury "caused him to abandon his new business" and that the new business was sufficiently similar in operation, financial backing, and other factors so as to be comparable to plaintiff's present store and to allow plaintiff to establish a probability of success in that operation. *Id.* at 721.

### B. *Application of Louisiana Law*

■ Judge Bramwell, relying solely on *Afeman v. Insurance Company of North America*, 307 So.2d 399 (La.App.1975), concluded before trial that once a plaintiff has chosen the benefits of the corporate form of business organization, he should not be permitted to "disregard that decision" by recovering for the lost profits of the corporation. We do not believe *Afeman* stands for this broad proposition. The Louisiana Civil Code distinguishes between corpora-

tions and the persons who create and own them. *See* La.Civ.Code Ann. art. 436 ("Corporations are intellectual beings, different and distinct from all the persons who compose them."). Allowing a plaintiff to recover for the lost profits of the corporation that he owns does not contradict this fundamental tenet of corporation law. While plaintiff is not entitled to recover directly for the lost earnings of the company, he may recover for the reduced value of his asset, the corporate stock. *See Nobile v. New Orleans Public Service, Inc.,* 419 So.2d at 39 n. 6.

In *Afeman,* plaintiff was the president and 90% owner of a construction company and sought to recover an amount representing the loss of profits sustained by the corporation. Plaintiff's injury restricted his ability to work for about three months. The *Afeman* court found that plaintiff had proved no causal connection between his injury and any claimed corporate loss. The corporation had suffered losses before and after the injury and plaintiff had presented no evidence demonstrating that any corporate loss was directly attributable to his injury. Further, there was no basis for concluding that a three-month period of corporate losses had any negative effect on the value of plaintiff's stock in the corporation.

■ Turning to the present case, plaintiff failed to prove that the injury was the proximate cause of the corporate losses. At trial plaintiff failed to sustain his burden of showing a causal connection between his injury and D & J's failure. The business profits of D & J depended in large part on the employment of capital or the labor of others. For instance, much of D & J's operation involved a capital-intensive manufacturing process. Moreover, Judge Bramwell correctly observed that plaintiff was unable to prove with sufficient certainty D & J's future profitability. Prior to the accident, the business was in serious financial trouble and its principals, Metz and Hesser, were not on the best of terms. The two-year old company had established virtually no track record of earnings; it

had never declared a dividend. Given the highly speculative character of profitability of plaintiff's corporate enterprise, the exclusion of D & J's profits as a measure for plaintiff's loss of future earning capacity was entirely proper under Louisiana law.

■ Instead the factors to consider in measuring plaintiff's lost earning capacity are his past salary for his work, his ability as salesman and administrator, and the outlook for the industry. Gross sales of plaintiff's accounts are relevant. Defendants concede the relevance of the amount of gross sales plaintiff made for other companies prior to his employment with D & J. But they argue that plaintiff's reference to the gross sales of that company were prejudicial and misleading. Gross sales are misleading only if presented in conjunction with plaintiff's ownership interest in D & J. There is a danger that the jury might place too much emphasis on the large gross sales figures if they knew that plaintiff owned the business. As the future value of plaintiff's ownership interest is too speculative to form a basis for recovery, it is unnecessary to inform the jury of his ownership interest in that enterprise. Therefore, the amount of gross sales that plaintiff generated and the value of his service to D & J, as reflected by plaintiff's annual salary and benefits, are relevant matters for the jury to consider without alluding to his ownership interest in the corporation.

IV

Throughout the trial and on appeal, the parties have vigorously disputed the amount of money plaintiff received from D & J as salary in 1978 and 1979. That he earned $24,000 in each of 1975 and 1976 and $21,000 in 1977 is undisputed. Plaintiff's 1978 income tax forms showed that he received $13,750 in that year. Through testimony of his accountant, plaintiff attempted to show that his salary for that year was actually $64,480. Judge Wexler found plaintiff's explanations unclear and unhelpful. Presenting an inflated earnings figure that has little or no basis in fact is highly prejudicial in a case like this in

which the jury is called upon to extrapolate twenty-five years of expected income based upon data for only a few years. On remand, the trial judge should determine whether there is any basis for this higher salary figure before admitting any of the testimony. *See* Fed.R.Evid. 703. A similar problem arose in connection with the income plaintiff earned in 1979. Plaintiff reported that he earned $10,000 from January to April when the accident occurred. He sought to introduce testimony that he planned to draw $75,000 from the corporation for the full year.

■ As a general rule, Louisiana courts allow a plaintiff in a personal injury case to testify as to what he believes the extent of his loss to be. This rule is subject to significant limitations. In *Cobb v. AllState Ins. Co.*, 227 So.2d 152 (La.App.1969), plaintiff, who was a painting contractor, gave uncorroborated testimony of additional expenses and losses incurred as a result of his injuries. The court ruled that such unsupported testimony could not form a proper basis of recovery and stated: "With such a great disparity between the loss contended by Mr. Cobb and that which might have been expected from his past earnings, it was incumbent upon him to support his contention ... with some evidence in addition to his uncorroborated statement." *Id.* at 154. *See also Laville v. Hartford Accident and Indemnity Co.*, 178 So.2d 464, 468 (La.App.1965) (general estimate by plaintiff of his loss of earnings is not sufficient proof of such loss where corroborative evidence is shown to be available but is not produced); *Jenkins v. Audubon Insurance Co.*, 110 So.2d 221, 225 (La.App.1959) (same).

■ In the present case, there is a great disparity between plaintiff's estimate of his 1978 and 1979 income and the amount he reported on his income tax returns. Absent evidence to support these claims, it is prejudicial to defendants for the jury to consider plaintiff's uncorroborated assertions as a basis for estimating the value of his expected future loss of earnings. Thus, on the record before it the

trial judge properly excluded plaintiff's unsupported estimates of his 1978 and 1979 income.

V

For the reasons stated, the judgment appealed from must be reversed and this case remanded for a new trial.